SEBASTIAN BRIDGE DISTRICT *v.* LYNCH, CHANCERY CLERK.

4-5749 and 4-5892 138 S. W. 2d 81

Opinion delivered March 18, 1940.

*James B. McDonough,* for appellant.

*Warner & Warner,* for appellee.

SMITH, J. Separate appeals were prosecuted in cases Nos. 5749 and 5892, but as they arose out of the same transaction we dispose of both cases in this opinion, although the cases have not been consolidated.

The Sebastian Bridge District brought suit to foreclose and enforce its lien for delinquent improvement taxes, and the question presented in case No. 5749 is that of the fees due the clerk of the chancery court and those of the stenographer of the Tenth chancery district, of which district Sebastian county is a part.

The act pursuant to which the Improvement District had been organized, and under the authority of which the suit was brought (Act 104 of the Acts of 1913, p. 380), provides, in § 18 thereof, that "It shall be no objection to any suit brought for said purpose (to enforce payment of delinquent assessments) that the lands of two or more owners are joined in the same proceedings," but other sections of the act permit all delinquents to be sued in one case, and that was done here.

Section 19 of the act provides that the owner of delinquent property assessed shall be made a defendant if known; if not known, that fact shall be stated in the complaint, and the suit shall proceed as a proceeding *in rem* against the property assessed.

Section 20 provides that "Summons shall be issued, and the defendant shall be required to appear and respond within five days after service; . . ."

By § 21 it is provided that the owner of the delinquent property shall be served with a copy of the summons if found in the county, and, if not, that a copy of the summons shall be posted on the property and published in some daily newspaper published in the city of Fort Smith for one insertion.

The complaint described the delinquent property, the year or years for which taxes were due, and the amount thereof for each year, and opposite each tract was the name of the last-known owner. These owners were named as defendants in the body of the complaint. They were so numerous that it was agreed between the attorney for the improvement district and the clerk of the chancery court that the summonses should be printed, and this was done. The original of the summons was printed on white paper, and the copy for service was printed on yellow paper. They were otherwise identical. There was printed on each a form to be used by the sheriff to show in what manner service had been obtained, whether personally or by posting a copy on the delinquent property and by publication.

Two separate amendments were filed to the complaint covering lands and lots omitted from the original complaint, upon each of which amendments summonses issued as in the case of the original complaint, except that the summonses and the copies thereof were mimeographed, and not printed. Altogether, 1,970 summonses were issued by the clerk and served by the sheriff, either by delivery of a copy to the owner or by posting a copy thereof on the delinquent property and by publication. 1,500 summonses were printed, the remainder were mimeographed.

The clerk made a charge of $1 for himself on each of the 1,970 summonses and of 50 cents upon each summons for the stenographer of the Tenth chancery district, which charges were disallowed by the regular chancellor of that district. Upon motion filed to retax the costs, the matter was heard by another chancellor upon exchange of districts, and upon final hearing it was found and decreed ''That there was one original

summons issued upon the original complaint; one original summons issued upon the first amendment to said complaint, and one original summons issued upon the second amendment to said complaint, and that for each of said original summons the clerk is entitled to a fee of $1, or a total of $3; that said stenographer is entitled to a tax of 50c upon each of said three original summonses, or a total of $1.50.''

It was further found and decreed ''that the said clerk is entitled to a fee of $1 and the said stenographer to a tax of 50c for each defendant constructively served by the sheriff in the publication of summonses according to said sheriff's return thereof and proof of publication filed herein; and the said total sum of costs taxed in favor of said clerk amounts to $469, and the total sum taxed in favor of the stenographer amounts to $236.'' This allowance to the clerk, plus the $3, makes his fees $472, and the allowance to the stenographer, plus the $1.50, makes the fees of the latter $237.50.

From that decree the bridge district and the clerk and court stenographer have all appealed.

It thus appears that the court allowed the fee of $1 claimed by the clerk and the fee of 50 cents claimed by the stenographer as to one summons upon the original complaint and one summons upon each of the two amendments to the complaint, made no allowance for summonses which had been personally served, but did allow fees for the summonses which had been constructively served.

We find no authority in the law for this distinction. Certainly, the fees of the clerk and stenographer allowed by law upon the issuance of a summons would not be dependent upon the manner in which the sheriff served it.

The statute (§ 1354, Pope's Digest) provides that ''With every summons, the clerk shall issue as many copies thereof as there are defendants named therein, unless otherwise ordered by the plaintiff.''

There were issued 1,970 white or original summonses and 1,970 yellow or copies thereof, and while the basis

and purpose of the suit was to collect delinquent taxes, each defendant was sued for his own delinquency, and for no other.

The names of all the defendants sued in the original complaint were printed in the summons which issued thereon, and the names of all the defendants sued in the first and in the second amended complaints were mimeographed in the summons which issued on these amendments, respectively. This appears to have been done by consent and for the sake of convenience and accuracy in including all delinquent property owners. Neither the printed nor the mimeographed copies were summons, and they did not become such until signed by the clerk and attested by the seal of his office, and by him delivered to the sheriff for service. All 1,970 summonses were signed, sealed and delivered by the clerk to the sheriff.

Section 5659, Pope's Digest, which fixes the fees of the clerks of the chancery courts, allows "For drawing, sealing, writing and issuing a writ (original)" a fee of $1.

The fees of the official reporter of the tenth chancery district are provided for by act 181 of the Acts of 1937, which amended act 175 of the Acts of 1925, under which the stenographer is allowed a fee of 50 cents upon each writ of summons, which is credited to the "Stenographer's Fund Account" of that chancery district.

It is objected that, inasmuch as act 181 of the Acts of 1937 relates only to the tenth chancery district, it is void as violative of Amendment No. 14 to the Constitution, prohibiting local legislation. We do not think so. In the case of *Buzbee* v. *Hutton*, 186 Ark. 134, 52 S. W. 2d 647, it was held that an act making the office of the Pulaski chancery clerk appointive, instead of elective, was not unconstitutional as a local or special act, prohibited by Amendment No. 14 to the Constitution. This was there said to be so for the reason that statutes establishing or abolishing separate courts relate to the administration of justice, and are neither local nor special in their operation, and that the clerk is a vital part

of the court organization. It is equally true that under modern conditions the court stenographer is also an essential officer in reporting the proceedings of the courts. 60 C. J., chapter, Stenographers, p. 21.

Act 181 does not, therefore, offend against amendment No. 14.

The controlling question in the first appeal appears, therefore, to be, whether the clerk issued only 1 summons or 1,970 summonses. This question would be very definitely put at rest if Act No. 5 of the 1939 Extraordinary Session of the General Assembly is valid legislation, and was applicable here. This is "an act to provide for the costs in suits against delinquent property owners in bridge improvement districts," and under its provisions the clerk is allowed to charge for each copy as for an original writ .to each defendant in a suit to foreclose the lien of the bridge improvement districts.

As has been said, this act No. 5 was passed at the 1939 extraordinary session of the general assembly. The proclamation of the governor under which this Extraordinary session was called recites the purpose thereof to be "to consider, and, if so advised, enact legislation providing for refunding of the existing outstanding indebtedness of the state, evidenced by obligations issued or to be issued, under the provisions of act 11 of the special session . . . approved February 12, 1934; to appropriate funds necessary to carry out any such refunding legislation; to appropriate funds from surplus highway revenues over debt service requirements for any lawful purpose; . . ."

The case of *State Note Board* v. *State, ex rel. Attorney General,* 186 Ark. 605, 54 S. W. 2d 696, declares the law to be that ". . . lawmakers, when convened in extraordinary session, 'may act freely within the call and legislate upon any or all of the subjects specified, or upon any part of a subject; and every presumption will be made in favor of the regularity of its action,' and that the provisions of the constitution in question merely require the governor 'to confine legislation to particu-

lar subjects and not to restrict the details springing out of the subjects enumerated in the call.' ''

We do not think legislation upon the question of the costs allowed clerks of courts in proceedings to enforce payment of delinquent assessments due bridge districts can be said to be fairly connected with or related to the general subject of refunding the state's highway indebtedness; and we, therefore, hold that act No. 5 was beyond the purview of the governor's proclamation, and is void and ineffective for that reason.

The undisputed fact is that the clerk actually issued 1,970 white or original summonses, with the same number of copies; and this was done with the consent, if not at the direction, of the attorney for the improvement district. That number of summonses were signed, attested, and sealed and delivered by the clerk to the sheriff for service. These summonses were served separately by the sheriff, and a separate return made upon each of them.

In addition to the provisions of § 1354, Pope's Digest, above copied, it is also provided by § 1352, Pope's Digest, that ''a summons shall be issued at any time, to any county, against any one or more of the defendants, at the plaintiffs request. But a summons not served shall not be taxed in the costs, unless otherwise ordered by the court.''

Here, the clerk signed, sealed and delivered to the sheriff 1,970 summonses, and the fact that they were printed makes no difference. At 14 C. J. S., § 12, p. 1227, title Clerks of Courts, it is said: ''As a general rule, a party has no right to perform services which the law imposes on the clerk and thus deprive the latter of his lawful compensation. Where such services are performed by a party or his attorney the clerk is nevertheless entitled to compensation as if he had performed them himself; but the contrary has been held in some jurisdictions; and when a statute provides that a party litigant shall cause a certain thing to be done, it impliedly repeals a statute authorizing a court to fix the fee of the clerk for the same service and deprives the clerk of his right to the fee.''

In *Cudahy Packing Co. v. McGuire,* 135 Fed. 891, the plaintiff had 520 printed copies of a restraining order certified and sealed by the clerk, who taxed costs of $5.70 for each copy. These fees were held to be legal, and it was there said: "It is not material how the clerk makes the copies, whether he has them printed, typewritten, or written with a pen; in either case he is required to charge the statutory fee for making and certifying to the same, and the complainant cannot defeat the government or the clerk of the right to charge and receive the fees required by law to be charged for such services by himself preparing the copies and delivering them to the clerk, to be signed and certified by that officer." *Blackwater Drainage District v. Borgstady,* 162 Mo. App. 151, 144 S. W. 888, is to the same effect.

We are of the opinion, therefore, that the clerk was entitled to a fee of $1 for each summons issued, or $1,970 for all of them; and if there were 1,970 summonses issued, the stenographer, under act 181 of the Acts of 1937, hereinbefore referred to, is entitled to a fee of 50 cents for each one of them, or a total of $985.

The decree in case No. 5749 will, therefore, be reversed and the cause remanded, with directions to assess these costs as herein directed.

On June 17, 1939, a final decree of foreclosure was rendered, which ordered the sale of all delinquent lands and parcels of land to satisfy the taxes, penalty and costs, including fees of the attorney for the improvement district, and those of the commissioner. The clerk of the court was appointed commissioner to make the sale.

The decree recited service against all the delinquent lands and lots; but many property owners had paid the assessments, penalty and costs against their lands since the suit was commenced. Those thus paying and the property paid on are recited. There were many such owners. All the other lands were ordered sold.

A fee of $2,000 was allowed the attorney for the district, and taxed as costs, which is not complained of. .

A fee of $2 was allowed the commissioner for the sale of each tract of land, which was taxed as costs against

each piece of delinquent property. Costs totaling $6.88 were assessed against each lot or parcel of land ordered sold.

The decree reserved for the further consideration of the court the amount of costs to be taxed for the clerk and other officers of the court other than the attorney's fee; and reserved the right also, in the event there had been an overpayment of costs, to return the excess to the taxpayers.

It was further decreed that delinquent property owners might pay the taxes, penalty and costs assessed against their lands to the commissioner, who was required to make report of such payment to the court, which report should operate as a satisfaction of the decree against the property whose owner thus paid.

Pursuant to this decree the commissioner advertised the delinquent lots and lands for sale, and, on September 11, 12 and 13, 1939, sold those which had not then been redeemed.

The clerk presented his bill for costs for issuing the summonses, and that claim was disposed of as hereinabove stated.

Some time prior to September 25, 1939, the clerk, as commissioner, presented a statement of costs as follows:

"Preparing and copying decree containing
 192,950 words at 10c per hundred.................$ 192.95
For selling at Commissioner's sale 43 separate
 pieces at $2 per piece, tract or lot to indi-
 vidual purchasers ........................................... 86.00
For selling at Commissioner's Sale to Sebas-
 tian Bridge District 1,935 separate pieces
 at $2 per tract, piece or lot...........................3,870.00

$4,148.95"

This cost statement was later supplemented by two additional items as follows:

"For dismissing 2,586 separate tracts of land
 from Complaint at 50c per tract........................$1,293.00
For transcribing 1,978 separate judgments on
 Judgment Docket ............................................. 989.00"

The total of these five items is $6,430.95, and upon receipt of these statements the improvement district, on September 25, 1939, filed a motion to retax these costs, which challenged, in whole or in part, all the items thereof except the one for $86 covering the sale of 43 tracts of lands to individual purchasers at $2 per tract.

It was insisted that the clerk was not entitled to charge any items of costs, for the reason that he had not complied with the provisions of § 5715, Pope's Digest, which reads as follows: "Every officer to whom fees are allowed by law, shall cause to be set up, in some conspicuous place in his office, and there constantly keep, a fair list or table of his fees hereinbefore prescribed; and, in case of default, any such officer shall forfeit all the fees pertaining to his office, so long as he shall neglect to set up and keep up said fee bill, as aforesaid."

Supplementing this section, and as a part of the same act of which § 5715, Pope's Digest, is a part, § 5721, Pope's Digest, provides a penalty of $5 for each demand or receipt of more or greater fees than are allowed by law.

It is apparent that this legislation is highly penal, and it must, therefore, be strictly construed. When so construed, it cannot be held applicable to the costs of the chancery clerk of Sebastian county, for the reason that this official is not paid fees for his services, but is paid a fixed salary for all purposes, as provided in the Salary Act initiated and adopted in that county.

It is true that the act fixing the salary of the clerk requires him to collect the statutory fees for his services, but these are not collected for his own benefit. They are collected for the benefit of the county, which pays the salary fixed by the Salary Act from the fees collected by the clerk.

In the recent case of *Dew* v. *Ashley County,* 199 Ark. 361, 133 S. W. 2d 652, it was said that the fee system has been abolished in many counties in so far as compensation for the officers is concerned, and although the officer is required to collect fees for his services, he does this for the benefit of the county of which he is an officer, and

these fees were preserved as a means of measuring the value of the services rendered to the individual, but they were not fees allowed by law to the officer for his services.

A response was filed to the motion to retax costs, and oral testimony was offered on the hearing of this motion, which has been incorporated in the transcript, and on November 15, 1939, a decree was rendered, from which both the improvement district and the commissioner have appealed. Accompanying this decree, as a part thereof, is the written opinion of the chancellor, to which further reference will be made.

The chancellor was of the opinion, that, in view of the magnitude of the case and the large amount of costs claimed, the original allowance of $2 to the commissioner for each tract of land sold should be modified in the following respects:

1. On all tracts of land where the tax and penalty did not exceed $2, a fee of 50 cents should be allowed:

2. Where the tax and penalty was in excess of $2, but did not exceed $5, a fee of $1 should be allowed;

3. In all cases where the tax and penalty exceeds $5, a fee of $2 should be allowed.

The effect of that finding was to allow a fee in the case of lands on which the tax and penalty was $2, or less, of $647.

In the case of lands where the tax and penalty was as much as $2, but less than $5, of $426, and

On the remaining tracts where the tax and penalty exceeded $5, of $516.

The three items total $1,589, which is $2,281 less than the fee claimed.

We think the chancellor had the authority to make this reduction; but we are also of the opinion that it should be still further reduced. We think, that in view of the large number of tracts involved and other costs allowed, the fee should not, in any case, exceed 50 cents per tract, regardless of the tax and penalty due thereon. This view will reduce the fee of the commissioner on account of these items to the sum of $989.

Section 30 of act 104 of the Acts of 1913, p. 380, provides that "No allowance to the special commissioner for his service shall exceed $5 for each lot, tract or parcel of land sold, and certificate made by him," so that, while the fee may not exceed $5 for each lot or tract, it is within the discretion of the court to fix the fee at a smaller sum, and, for the reasons stated, we think the fee should be fixed at $989, and it is so ordered.

The improvement district insists that no fee should be allowed on this account, as these tracts of land and lots were not "sold" to the district. Section 29 of act 104, *supra,* provides that if no bidder offers the amount of the assessment, penalty and costs for a particular lot or tract of land, "then the delinquent land shall be stricken off to the bridge district and a deed be made to it in like manner as to an individual purchaser."

The process is the same whether a tract of land is bid in by a purchaser or is "stricken off" to the district. The same labor and responsibility is required in either instance by the commissioner, and the same fee would be allowed in the one case as in the other. *No Fence District No. 1 of Lincoln County* v. *Grumbles,* 177 Ark. 784, 7 S. W. 2d 977.

The court disallowed the charge of $1,293 "For dismissing 2,586 separate tracts of land from complaint at 50c per tract." And we concur in that finding. The fees claimed under act 158 of the Acts of 1939, p. 373, which, so far as this fee is concerned, is the same as § 5657, Pope's Digest, a paragraph of each reading: "For entering a retraxit, discontinuance or non-suit, $ .50."

It is said that striking from the complaint a tract of land on which the owner paid the taxes and marking the same paid, is, in effect, a non-suit. But we do not think it is so within the meaning of the statute fixing the fee, and the action of the court in this respect is affirmed.

The court found that the item, "Preparing and copying decree containing 192,950 words at 10c per hundred, $192.95," was excessive, and should be reduced to $146.40.

The opinion of the chancellor illustrated wherein the decree had been unnecessarily extended by showing the tax as extended against lot 7, block 9, city, as follows:

"Lot 7, Block 9, City

| | | |
|---|---|---:|
| 1932 | Tax | $ 2.50 |
| | Penalty | .50 |
| 1933 | Tax | 1.95 |
| | Penalty | .39 |
| 1934 | Tax | 2.25 |
| | Penalty | .45 |
| 1935 | Tax | 1.69 |
| | Penalty | .34 |
| 1936 | Tax | 1.69 |
| | Penalty | .34 |
| 1937 | Tax | .99 |
| | Penalty | .20 |
| | | $13.29 |
| | Costs | 6.88 |
| | Total | $20.17" |

The chancellor held that the extension in the decree should have been as follows:

"Lot 7, Block 9, City

| | |
|---|---:|
| Tax 1932-37, Incl. | $11.07 |
| Penalty | 2.22 |
| Costs | 6.88 |
| Total | $20.17" |

The penalty and costs against all other tracts of land were likewise unnecessarily extended. The accuracy of the court's finding is not questioned, and this reduction is not complained of by the commissioner, and that finding is affirmed.

The court disallowed in its entirety the item, "For transcribing 1,978 separate judgments on Judgment Docket, $989." This was done, for the reason stated in the opinion of the chancellor, that it was a service not required.

The allowance of these fees is defended and insisted upon by the commissioner under the authority of §§ 8234 and 8237, Pope's Digest, the first of which sections provides that "The clerks of the several courts of record shall procure and keep in their several offices a well-bound book to be known as the 'Judgment Docket' in which all judgments and decrees, whether rendered by the court or by confession, shall be entered in the order of their date." Section 8237 provides that, in recording any final judgment or decree in the judgment book, the clerk shall set forth the names of the parties, the date of the judgment or decree, its nature, the amount of debt, damages and costs, with a reference to the book and page in which such judgment or decree was originally entered.

The decree here referred to was not for a debt, nor was it one for damages. There is no personal liability for the taxes due on the owner's land. The payment of the betterment assessments or taxes can be enforced only against the land, and there is no personal liability therefor on the part of the owner.

We conclude, therefore, that the court was correct in disallowing this $989 item in its entirety.

From this decree all parties appealed; but it will be affirmed except in the respects in which we have modified it. Inasmuch as it relates to and affects title to real estate, the causes will be remanded with directions to modify both decrees here appealed from in the respects indicated.

The costs of the appeal will be equally divided between the clerk as commissioner and the improvement district, except as to the costs of the supplemental transcript, filed in response to a writ of certiorari which issued at the instance of the commissioner.

A transcript was filed in Case No. 5892 by the improvement district, consisting of 122 pages, which sufficiently presents all the issues arising for our decision. In response to the writ of certiorari a supplemental transcript of 851 pages has been filed, in which there is copied in full the recitals of the decrees as to each tract

of land embraced in the complaint as originally filed. This has served no useful purpose, as the original transcript first filed sufficiently presented all the issues requiring our consideration. The costs of this supplemental transcript will, therefore, be assessed against the commissioner.