## JEFFERY COOK BELL *v.* ANITA C. BELL, ADMINISTRATRIX ET AL

5-5404                                    462 S. W. 2d 837

### Opinion delivered February 8, 1971

*W. C. Dinning, Jr.* and *Shieffler & Murray,* for appellant.

*Charles B. Roscopf,* for appellees.

CARLETON HARRIS, Chief Justice. Reverend Eugene Bell, who resided in Phillips County, Arkansas, died testate on October 14, 1967, leaving an estate valued at approximately $85,000. He was survived by his widow, Anita Carter Bell, administratrix herein. Under the will, the widow was left less than the amount that she was entitled to as dower under Arkansas law, and the balance of the estate was devised and bequeathed to various individuals; no mention was made of any child. Approximately four months after the death of Bell, a child, Bernie Jean Bell, was born to his wife. Anita Carter Bell elected to take against the will and filed a petition for determination of heirship and distribution. Original respondents were the legatees and devisees mentioned in

Bell's will, and other collateral heirs. Tillie Cook Thornton, mother and next friend of Jeffery Cook Bell, appellant herein, then filed a petition asserting that she was the mother of Jeffery Cook Bell, who was born on August 11, 1954, at Memphis, Tennessee, and that the decedent, Eugene Bell, was the father of this child. After mentioning alleged facts relied upon for the establishment of paternity, the petitioner asked that Jeffery Bell be declared an heir of Eugene Bell, deceased. On trial, after hearing several witnesses, the court found that Bernie Jean Bell was a subsequently born child of Eugene Bell; that Eugene had no other children or descendants, and that Bernie Jean Bell was the sole and only heir at law of the decedent and entitled to all the rights of a subsequently born child as provided by Ark. Stat. Ann. § 60-507 (1969 Supp.). It was held that the various legatees, devisees, and collateral heirs were without any interest in the estate. Accordingly, the entire estate was ordered vested in Bernie Jean Bell, subject to the dower and homestead rights of her mother, Anita Carter Bell. From the order so entered comes this appeal. For reversal, it is asserted that appellant, as a pretermitted child, should inherit from his father, and it is next asserted that statutory enactments which prevent illegitimate children from inheriting from the father, are unconstitutional because they deny such children equal protection of the law as required by Article 2, § 3 of the Arkansas Constitution, and as required by the Fourteenth Amendment to the United States Constitution.

At the outset, it may be said that there is no dispute but that Bernie Jean Bell is the child of Eugene and Anita Carter Bell, and appellant is simply contending that he is entitled to share in the estate along with this daughter.

The pertinent part of the statute involved, Ark. Stat. Ann. § 61-103 (1947), reads as follows:

"* * * * If a man have by a woman a child or children, and afterward shall intermarry with her, and shall recognize such children to be his, they shall be deemed and considered as legitimate."

In *Parker* v. *Hadley*, 227 Ark. 161, 296 S. W. 2d 391, this court held that the statute requires proof of three things, *viz*, "(1) The actual parentage of the putative father; (2) The putative father's marriage to the mother of the illegitimate child, and; (3) Recognition by the putative father, after the marriage, of the child as his". Without any hesitation whatsoever, we hold that none of the requirements have been met in the instant case.

As to paternity, Jeffery Bell testified that he was fifteen years of age and lived with his mother and her husband in Chicago, having been born on August 11, 1954. Appellant stated that Eugene Bell was his father but that he never knew Bell until 1964. The witness said that he spent two summers, and one school year, with Bell and Anita. As a young child, he lived for a time with his uncle and aunt, Mr. and Mrs. Rubin Donahoo,[1] at Onedia, in Phillips County. Appellant stated that during the summers that he spent with Reverend Bell, the latter took him hunting and fishing, and to church and Sunday School on Sunday, and said that his father entered him in school when the term commenced in 1966. He also said that he had received letters from his father, and he "thought" the alleged father visited him once in Chicago; however, he offered no letters in evidence.

Rubin Donahoo, the uncle, testified that when Jeffery was small, he spent part of the time with the Donahoos and part with Eugene Bell. Subsequently, he testified that he could not recall Jeffery visiting in the home of Eugene Bell prior to the death of Fannie,[2] who died in October, 1963. He also stated that Jeffery stayed with Bell during a school term, although he couldn't remember whether it was 1965, 1966, or 1967. On cross-examination, Donahoo was asked if he knew several particular persons who, according to the questions, had at one time lived with the Reverend Bell. Donahoo replied "I know that most of those names

---

[1]Mrs. Donahoo was a sister of Jeffery Bell's mother, Tillie Thornton.

[2]Fannie Johnson Bell was the former wife of Eugene Bell, having married him on March 4, 1942.

you called was—Fannie Bell's peoples. I know that". He said that he did not know whether they lived in the Bell house or simply stayed on the Bell "place". He was then asked "As a matter of fact isn't it true that Reverend Bell raised the nieces and nephew of his former wife—deceased wife, Fannie Bell?" Donahoo replied, "That probably—probably is possible. I don't know".

Anita Bell testified that Jeffery Bell lived with her and Eugene Bell from September of 1966 until the end of May 1967, and that the youngster had visited on one other occasion for about three months during the summer. She said that she fixed Jeffery's meals, washed his clothes, that her husband bought Jeffery's clothes, and enrolled the boy at school.[3] During the years 1965, 1966, and 1967, Jeffery was listed as a dependent child on the income tax return filed with the federal government. Bell also listed another child as a dependent, Jessie, a nephew of Eugene Bell's by marriage. Jeffery and the nephew slept together in the Bell home during 1966 and 1967. This was the sum total of evidence offered in support of the contention that appellant was the son of Eugene Bell, and we think it falls far short of establishing that fact. The only testimony that Jeffery Bell was the son of Eugene Bell was given by appellant himself, who gave no basis for his belief, and whose information, of course, could only depend upon what he had been told by some other person, or documentary evidence. One might perhaps assume that Jeffery obtained the information from his mother, since the petition was brought in her name (though she did not sign it). The only documentary evidence offered was the income tax return heretofore mentioned, and it certainly is without particular significance since the boy Jessie, also listed as a dependent, was without dispute a nephew of Eugene Bell by marriage.[4] No birth certificate was offered; there was no evidence of birth from a family Bible, nor evidence of statements by Eugene Bell that Jeffery was his son; nor was there evidence that Bell "courted" Tillie Thornton, co-habited with her, or had

---

[3]The record does not reflect the name under which Jeffery was enrolled.

[4]The income tax return only listed the two boys by their first names as "dependent children", no relationship being shown.

opportunities for intimacy with her; in fact, it is not shown that these persons even knew each other prior to the time of Jeffery's birth. Probably the most conspicuous omission in appellant's evidence was the failure of Jeffery's mother to testify, either in person, or by deposition. While the mother apparently instituted the petition that occasioned the hearing on the question of Jeffery's parentage, she did not testify, nor is any reason given for her failure to do so. Jeffery only testified that she was presently married to Odell Thornton and lived in Chicago. Certainly, Mrs. Thornton is the one person living who has the most knowledge regarding the paternity of appellant, and would have been, by far, the most important witness on his behalf. It is apparent, from what has been said, that appellant's proof was insufficient.[5]

Momentarily passing the second requirement for an illegitimate child to establish himself an heir of the purported father as set out in *Parker* v. *Hadley, Supra,* we might also state that proof, relative to the third requirement (recognition by the putative father, after marriage to the mother, that the child is his own), is also lacking. The only evidence offered in this connection is set out under point one, and is, of course, insufficient.

There is no need to discuss appellant's point two

[5]This finding makes it unnecessary to mention a rather unusual argument advanced by appellant. It is mentioned that Ark. Stat. Ann. § 60-507 (1969 Supp.), Sub-Section b, relating to pretermitted children, only refers to a living child or issue of the testator, rather than referring to a "legitimate" child. In other words, he argues that there is no requirement that a pretermitted child be legitimate. Without going into any extended discussion, it might be said that all statutes relating to inheritance must be read together. As to legitimacy, this court, quoting § 5 of the chapter on "Bastards", in R. C. L. page 725, in the case of *Williams* v. *Ketchum,* 178 Ark. 1141, 13 S. W. 2d 605 (February 11, 1929), said:

"It has been said that the law presumes that every child in a Christian country is *prima facie* the offspring of a lawful rather than of a meretricious union of parents, and this is true in one sense. Filiation being established, legitimacy is presumed. *However, where the right to inheritance is claimed, the burden is on the claimant to establish the fact that he is a legitimate heir,* [Our emphasis] though, after proof of filiation, he will receive the benefits of the presumption of legitimacy."

since we are holding the evidence insufficient to establish either paternity or recognition of the illegitimate child. However, it might be stated that appellant admits his mother was never married to Reverend Eugene Bell. It is contended that the statute, quoted at the outset of this opinion, is unconstitutional as discriminatory against illegitimate children, in that they are denied the same protection of the law afforded legitimate children. We do not pass upon constitutional questions when litigation is disposed of without reaching the constitutional question, *Herman Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487. Accordingly, since anything said on this point would be pure *dictum,* there is no need for further discussion.

Affirmed.