S<small>TROUD</small> & M<small>AYS</small> JJ, not participating.

William E. BEAUMONT, County Judge
of Pulaski County, Arkansas *v.* Richard B.
ADKISSON, Circuit Judge

79-311                                    593 S.W. 2d 11

Opinion delivered January 14, 1980

*James L. Sloan,* for petitioner.

*Steve Clark,* Atty. Gen., by: *Russell Meeks III,* Deputy Atty. Gen., for respondent.

*Robert L. Brown,* of *Harrison & Brown, P.A.,* for Amicus Curiae, County Judges Association of Arkansas.

DARRELL HICKMAN, Justice. William E. Beaumont, County Judge of Pulaski County, asks for a writ to prohibit Pulaski County Circuit Judge, Richard B. Adkisson, from ordering Beaumont to show cause why he should not be held in contempt of court. We granted a temporary stay and now make it permanent.

Adkisson, who is one of five Pulaski County Circuit Judges, issued an order September 7, 1979, finding that two of his employees, a Probation Officer/Bailiff and a Secretary/Case Coordinator, should be paid salaries of $16,500.00 per year. The order recited, as its authority, Act 629 of 1979, Acts of Arkansas. The order instructed "Pulaski County, Arkansas, the county judge thereof, and all other appropriate officers of Pulaski County, Arkansas" to pay the salaries. The court's order is Exhibit A to this opinion. Act 629 is Exhibit B.

Beaumont presented an ordinance to the Pulaski County Quorum Court which would have appropriated the money to pay these salaries, however, the quorum court on two occasions failed to pass the ordinance. Consequently, Beaumont was told by Judge Adkisson to appear and show cause why he should not be held in contempt for refusing to pay the salaries as ordered.

Beaumont argues in his petition that the act he has been commanded to perform is illegal and that, therefore, the court has no jurisdiction to enforce it. Beaumont attacks the order on four grounds. First, Act 629 violates the equal protection clause of the state and federal constitutions. Second, that a county judge cannot expend funds for which there has been no appropriation. Third, that Act 629 violates the ban in the state constitution on local legislation. Fourth, that it unconstitutionally delegates legislative power to a judicial officer. We will deal only with the third and fourth points.

Adkisson argues in his response that Act 629 is not discriminatory, that he can order a county judge to pay money where the administration of justice is involved, that Act 629 is permissible local legislation because it deals with the administration of justice, and that the legislature can delegate to a judicial officer the right to set, within limits, a salary.

The County Judges Association has filed an *amicus curiae* brief and essentially argues that Amendment 55, Section 3, to the Arkansas Constitution prohibits the county judge from disbursing funds without a quorum court appropriation; that the General Assembly has no authority to fix the number of county employees or the compensation they receive, or that, in any event, there has to be an appropriation; and that the court's order is invalid.

Prohibition is the proper remedy in this case. We said in *Duncan* v. *Kirby, Judge,* 228 Ark. 917, 311 S.W. 2d 157 (1958).

> . . . The writ of prohibition lies where an inferior court is proceeding in a matter beyond its jurisdiction and where the remedy by appeal, though available, is inadequate. . . . And where it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the superior court exercising supervisory control over the inferior court may prevent such unauthorized proceedings by the issuance of a writ of prohibition. . . . *Id.* at 920.

There is no doubt that the Act violates Amendment 14 to the Arkansas Constitution, which reads: "The General Assembly shall not pass any local or special acts. . . ." Act 629 applies only to the "Fourth Division Circuit of the Sixth Judicial Circuit;" the Act does not apply to the other four circuit judges in the Sixth Judicial Circuit. There are five circuit judges in the Sixth Judicial Circuit. Ark. Stat. Ann. § 22-365(f) (Repl. 1962). We have since declared that there is no longer any distinction among divisions. All circuit judges have equal authority and responsibility. See *Harkness* v.

*Harrison,* 266 Ark. 59, 585 S.W. 2d 10 (1979).

The only way that Act 629 could be legal is if it were held to be an act relating generally to all the circuit courts in the Sixth Circuit and it is determined to be essential to the administration of justice. Cf. *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S.W. 844 (1905) (act abolishing judicial district not unconstitutional). In the case of *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S.W. 2d 647 (1932), we upheld an act which created a separate chancery clerk for Pulaski County. We reviewed the reasons that the chancery court of Pulaski County was different, in a class to itself, from other chancery courts and held that the classification by the legislature was not unreasonable or arbitrary. In the case of *McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W. 2d 789 (1945), we held that a salary act for the court resporter of the Fourth Chancery District did not violate Amendment 14 to the Arkansas Constitution. The act was essential to the administration of justice. Although the court named served a limited territory, the act was general in its operation.

These cases relate to legislative acts that apply generally to all officials in a general category, although only one person might hold the office affected. The act before us distinctly limits itself to one of five circuit courts in a circuit and clearly violates the intent of Amendment 14. The Act is an example of the very sort of legislation that Amendment 14 was designed to prevent.

Since the Act is void, it follows that the respondent court had no jurisdiction to issue its order. In the case of *Mears* v. *Adkisson,* 262 Ark. 636, 560 S.W. 2d 222 (1978), we held that where a court order was based on an invalid act, the court had no jurisdiction to act and, therefore, its order was void and subject to a writ of prohibition.

Act 629 is also an unlawful delegation of legislative authority. It delegates to the "Sixth Judicial Circuit, Fourth Division Circuit Court" the right to set the salaries of two employees. While Act 629 does provide that the sum will be not less than $15,600.00, nor more than that which the court reporter receives, a sum not limited, it gives a judge a right to

set a salary. We have held before that circuit judges cannot set salaries. *Mears v. Adkisson,* 262 Ark. 636, 560 S.W. 2d 222 (1978).

The respondent judge argues that we have held in previous cases that it was not a delegation of legislative authority for certain state agencies to fix salaries within defined limits. The case of *Hooker* v. *Parkin,* 235 Ark. 218, 357 S.W. 2d 534 (1962), is cited as authority for that argument. In the *Hooker* case the question was raised whether the Highway Commission and the State Board of Education were unlawfully delegated the authority to fix the salaries of employees. The act in question in the *Hooker* case gave both departments the right to determine the number of employees needed and to fix their salaries within maximum authorizations. We held that this did not violate ARK. CONST., art V., § 29, which requires an appropriation by the legislature before money can be withdrawn from the state treasury. The distinction between the *Hooker* case and the case before us is that in *Hooker* the legislature had *appropriated* the money to pay the salaries which were authorized and set a limit on how much could be paid. In this case there has been no appropriation by the General Assembly. In effect, the court is legislating the salaries, as evidenced by its order.

Whether the state may order a county to pay salaries in such circumstances is not properly before us. It is also unnecessary for us to reach the question of whether there has to be an appropriation by the county before such a state act is valid. Neither is this a question of whether a court can order a county to pay expenses regarding the administration of justice where the county refuses to pay those necessary expenses.

We should point out that Beaumont is not subject to a contempt procedure in this case. Amendment 55 changed the duties of the county judge from being those of an official who pays claims as a judicial officer to those of an officer who pays claims as an administrative officer. See *Mears* v. *Hall,* 263 Ark. 827, 569 S.W. 2d 91 (1978). The quorum court appropriates the money and the county judge simply executes those appropriations as an administrative officer. The

county judge could not pay the funds unless they were appropriated. It would require an illegal act on his part. That was not the case before Amendment 55. Therefore, it was improper to consider him in contempt of court.

FOGLEMAN, C.J., concurs in part and dissents in part.

STROUD and MAYS, JJ., not participating.

## EXHIBIT A

### IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS FOURTH DIVISION

IN THE MATTER OF THE SALARY OF
THE PROBATION OFFICER/BAILIFF,
and THE SECRETARY/CASE
COORDINATOR OF THE FOURTH
DIVISION OF THE PULASKI COUNTY
CIRCUIT COURT                          EX PARTE

### ORDER

Pursuant to the authority of Arkansas Act 629 of 1979, the court finds that the salary of the Probation Officer/Bailiff and the Secretary/Case Coordinator should be increased to and set at $16,500.00 per year, a sum which does not exceed the annual salary of the court reporter of the Fourth Division of the Pulaski County Circuit Court; that the present compensation is inadequate for these positions and the added compensation is necessary to keep competent personnel employed in the positions; and that the court has the discretion under said Act to set the salaries of the said Probation Officer/Bailiff and Secretary/Case Coordinator at $16,500.00 per year; and hereby directs Pulaski County, Arkansas, the county judge thereof; and all other appropriate officers of Pulaski County, Arkansas to pay same.

It is, therefore, CONSIDERED, ADJUDGED and ORDERED that the salaries of the Probation Officer/Bailiff and the Secretary/Case Coordinator shall be and is hereby

increased to and set at $16,500.00 per year, beginning October 1, 1979, payable on the same periodic pay periods now used for county employees; and Pulaski County, Arkansas, the county judge thereof and all appropriate county officers are hereby ORDERED and DIRECTED to forthwith pay the salaries of the said Probation Officer/Bailiff and Secretary/Case Coordinator as herein directed, beginning October 1, 1979.

/s/ Richard B. Adkisson
Circuit Judge

## EXHIBIT B

## ACT 629, Ark. Acts of 1979

"An Act To Amend Act 3 of 1971, To Provide For An Increase in Salaries, And For Other Purposes."

Be It Enacted By The General Assembly of the State of Arkansas:

Section 1. Section 1 of Act 3 of 1971, as amended, is hereby amended to read as follows:

"Section 1. There is hereby created the office of Probation Officer/Bailiff, Deputy Probation Officer/Clerk and Secretary/Case Coordinator of the Fourth Division Circuit Court of the Sixth Judicial Circuit.

The Sixth Judicial Circuit, Fourth Division Circuit Court, is recognized as the Court created by Act 15 of the First Extraordinary Session of 1970."

Section 2. Section 3 of Act 3 of 1971, as amended, is hereby amended to read as follows:

"Section 3. The Probation Officer/Bailiff shall be appointed by the Judge of the Sixth Judicial Circuit Court, Fourth Division, and shall serve at the will of the Judge. In addition to the Probation Officer/Bailiff, the Judge may appoint one Deputy Probation Officer/Clerk and a Secretary/

Case Coordinator who will serve at the will of the Judge.''

Section 3. Section 4 of Act 3 of 1971, as amended, is hereby amended to read as follows:

''Section 4. The salary of each person appointed as set out in Section 3 shall be set at the discretion of the Judge of the Sixth Judicial Circuit, Fourth Division, at a sum not less than Fifteen Thousand Six Hundred Dollars ($15,600.00) per annum, but not to exceed that of the court reporter, which shall be paid by Pulaski County, Arkansas.''

Section 4. All laws and parts of laws in conflict with this Act are hereby repealed.

Section 5. It is hereby found and determined by the General Assembly that the position of Probation Officer/ Bailiff, Deputy Probation Officer/Clerk and Secretary/Case Coordinator are necessary to insure efficient and proper administration of justice in the Fourth Division of Circuit Court in the Sixth Judicial Circuit and that increased salaries as provided in Section 4 of this Act must be provided immediately. Therefore, an emergency is hereby declared to exist, and this Act being necessary for the immediate preservation of the public peace, health and safety, shall be in full force and effect from and after its passage and approval.

[Approved by Governor March 28, 1979]

JOHN A. FOGLEMAN, Chief Justice, concurring in part, dissenting in part. I agree that the writ should issue in this case solely because under Amendment 55 and Act 742 of 1977, the county judge cannot disburse funds that have not been appropriated by the quorum court. Amendment 55, § 3 provides that the county judge shall authorize and approve disbursement of all appropriated county funds. Nowhere does it appear that he has any constitutionally conferred authority to disburse funds that have not been appropriated. Act 742, § 78 (B) (2) [Ark. Stat. Ann. § 17-3901 (B) (2) (Supp. 1979)] provides that, before approving vouchers for payment of county funds, the county judge must determine that there is a balance of funds in the pertinent appropriation and that

the expenditure is in compliance with the purposes for which the funds are appropriated. There is also a provision that no money shall be paid out of the treasury until the same shall have been appropriated by law and then only in accordance with such appropriation. See *Mears* v. *Hall,* 263 Ark. 827, 569 S.W. 2d 91. So it is clear that the county judge has no legislative authority to disburse county money that has not been appropriated.

On the other hand, if Act 629 of 1979 and the trial court's action based upon it are valid, appropriation by the quorum court would be automatic, as the quorum court would have no discretion in the matter. *Mears* v. *Hall,* supra. *Quattlebaum* v. *Davis,* 265 Ark. 588, 579 S.W. 2d 599. Even though we said, in *Quattlebaum,* that the county court [judge] would have no discretion in determining whether payment should be made of obligations of a county mandated by the General Assembly, this does not mean that the county judge can be held in contempt for failure to pay funds from the county treasury, where, as here, the quorum court has refused to make an appropriation, and where no other proceedings to establish the county's liability have been had.

These are two bases upon which the majority finds Act 629 invalid. I do not agree that either basis is sound. Holding that the act is local legislation is contrary to every decision of this court where the administration of justice is concerned, particularly where the single court involved may issue summons to every county in the state, as every circuit court in Arkansas may do. Ark. Stat. Ann. § 27-312 (Repl. 1979).

It must be remembered that counties are still civil divisions of the state for political and judicial purposes and are the state's auxiliaries and instrumentalities in the administration of its government. They are political subdivisions of the state for the administration of justice. The word "county" signifies a portion of a state resulting from a division of the state into such areas for the better government thereof and the easier administration of justice. In these respects we have clearly held that nothing in Amendment 55 changed the status of the county insofar as its primary purposes and functions (one of which is the administration of justice) are

concerned. *Mears* v. *Hall,* supra.

In *Mears* we said:

\*\*\* An act does not have to be *necessary* to the administration of justice in order to avoid the ban against local legislation. It is not local legislation if it pertains or relates to the administration of justice.

We then added:

In the case cited by the majority in *McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W. 2d 789, the issue pertained to fees of the clerk of the Chancery Court of Sebastian County and those of the stenographer of the Tenth Chancery District, and it was held that the act allowing a fee to the court stenographer to be credited to the "Stenographer's Fund Account" of the chancery district was not local legislation. The reason was that the statute *related* to the administration of justice because under modern conditions, the court reporter is an essential officer in reporting the proceedings of the courts. See *Sebastian Bridge District* v. *Lynch,* 200 Ark. 134, 138 S.W. 2d 81. The same question was involved and the same answer given in *McLellan* v. *Pledger,* supra. Other cases holding that legislation *relating* to the administration of justice is not local are: *Smalley* v. *City of Ft. Smith,* 239 Ark. 39, 386 S.W. 2d 944; *City of Stuttgart* v. *Elms,* 220 Ark. 722, 249 S.W. 2d 829. Legislation dealing exclusively with the functions of a court of statewide jurisdiction is not local legislation. *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S.W. 2d 647. The rationale of these holdings was first stated in *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S.W. 844, in the following language:

\*\*\* Though such an act relates to a court exercising jurisdiction over limited territory, it is general in its operation, and affects all citizens within the jurisdiction of the court. Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole,

rather than the extent of the territory over which it operates; and, if it affects equally all persons who come within its range, it can be neither special nor local, within the meaning of the Constitution. ***

We elaborated upon this rationale in an opinion on rehearing in *Webb* v. *Adams,* 180 Ark. 713, 23 S.W. 2d 617, in treating and disavowing an intention to impair the holding in *Waterman,* saying:

> *** This is in recognition of that principle of state sovereignty under which the state, through its Legislature, may protect its own interest, and, by virtue of it, the Legislature may treat every subject of sovereignty as within a class by itself, and bills of that kind are usually held to be general and not local or special laws. ***

Again, in speaking of the rationale of *Waterman* in *Cannon* v. *May,* 183 Ark. 107, 35 S.W. 2d 70, we said:

> *** A Missouri case was cited in support of the ruling. The Supreme Court of Missouri based its holding on the principle that the judicial system of the state was a whole and that acts dealing with the courts have been usually held general *although not applicable to every court of like nature in the state.* The ruling proceeds upon the doctrine that the judicial department of the state is a "composite unit." *** [Emphasis mine.]

The rationale of *Waterman, Cannon* and *Webb* was relied upon in *Buzbee.*

In *Smalley* v. *City of Ft. Smith,* 239 Ark. 39, 386 S.W. 2d 944, we upheld Act 88 of 1963 against the contention that it was unconstitutional as local legislation and said that "legislation *relating* to the administration of justice is not local," citing *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S.W. 844 and *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S.W. 2d 647. [Emphasis mine.]

In *City of Stuttgart* v. *Elms,* 220 Ark. 722, 249 S.W. 2d 829, the act involved, Act 210 of 1949, fixed the salary of municipal judges throughout the state. It contained a provision that it should not apply to any city having a population of not less than 11,000 and not more than 11,800. Only the city of Jonesboro would have come within these limits, enabling that city to increase or decrease the salary fixed by the act. We said that the rule that a statutory classification must have regard to the character of the legislation and not be arbitrary "does not apply where the subject matter of the act *relates* to the administration of justice, as it does here," citing *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S.W. 844. [Emphasis mine.] Obviously, the number of people affected by the operation of the circuit court in Pulaski County, which is not only the most populous county in the state but also a large financial, commercial, industrial and governmental center, exceeds the number which would have any contact with a municipal court in Jonesboro by hundreds of thousands.

If we didn't mean that legislation relating to the administration of justice was not local legislation under Amendment 14, we should not have said so, over and over. See Anderson, *Special and Local Acts in Arkansas,* 3 Ark. L. Rev. 113, 124.

Given today's crowded court dockets and the prevalence of crime, who is to say that either a secretary/case coordinator or a probation officer/bailiff are non-essential to the administration of justice in the particular court involved? Obviously, the General Assembly of the State of Arkansas thought they were essential. Statutory authorization has been given circuit judges to require the payment of expenses incident or necessary to a speedy and efficient administration of justice. Pope's Digest § 2858; Crawford & Moses Digest § 2230.[1]

Every act carries a strong presumption of constitution-

---

[1] Once again, I point out that the compiler of statutes has not included this statute in Ark. Stat. Ann. upon the unwarranted assumption that it had been superseded by Ark. Stat. Ann. § 22-349.1 (Repl. 1962). The latter statute pertained only to expenses of judges and had no bearing whatever upon the expenses which were the subject of Pope's Digest § 2858.

ality, and in any attack on constitutionality, there must be a clear incompatibility between the act and the constitution before it is held unconstitutional. All doubts must be resolved in favor of the act. *Jones* v. *Mears,* 256 Ark. 825, 510 S.W. 2d 857; *Carter* v. *State,* 255 Ark. 225, 500 S.W. 2d 368, cert. den. 416 U.S. 905, 94 S. Ct. 1610, 40 L. Ed. 2d 110. It must also be remembered that, if it is possible for the courts to so construe an act that it will meet the test of constitutionality, the act must be so construed. *Stone* v. *State,* 254 Ark. 1011, 498 S.W. 2d 634.

The presumption of constitutionality fully applies when a statute is attacked as local or special, and, where it is doubtful whether the act violates the constitution, the doubt must be resolved in favor of constitutionality. *State* v. *Lee,* 193 Ark. 270, 99 S.W. 2d 835; *Whittaker* v. *Carter,* 238 Ark. 1074, 386 S.W. 2d 498.

It is true that an act is special when it *arbitrarily* separates some person, place or thing from others upon which, but for the separation, it would operate, but classification is still permissible if it bears a reasonable relation to the purpose of the statute. *Berry* v. *Gordon,* 237 Ark. 547, 376 S.W. 2d 279; *Hensley* v. *Holder,* 228 Ark. 401, 307 S.W. 2d 794. But where differences in effect of a statute are reasonably related to the purposes of the law, the statute is general and not local or special. *Whittaker* v. *Carter,* supra.

A statute that is limited in effect to only one or a few classifications is not local or special if the classification is not arbitrary and bears a reasonable relation to the purpose of the act. *Thomas* v. *Foust,* 245 Ark. 948, 435 S.W. 2d 793. The General Assembly may make a classification where it is appropriate, germane to the subject and based upon substantial differences which make one situation different from another. *Simpson* v. *Matthews,* 184 Ark. 213, 40 S.W. 2d 991. The judgment of the General Assembly in making statutory classifications should be controlling, unless the classification is clearly arbitrary or is manifestly made for the purpose of evading the constitution. *Simpson* v. *Matthews,* supra.

We have dealt with the question of local and special

legislation in relationship to salaries in *Lawhorn* v. *Johnson,* 196 Ark. 991, 120 S.W. 2d 720, where a statute provided for payment of the expenses of county judges acting in their capacities of road commissioners in every county except three. The act provided that, in those counties, the salary fixed should also cover the expenses of the office, without any explanation of the reason for the classification. We said:

> *** We cannot agree that this had the effect of making the act local or special. The compensation provided in the counties named was deemed sufficient by the Legislature to cover all the necessary expenses of the road commissioner and the Legislature had the right to so find and provide.

Given the presumption of constitutionality and due regard to the extent of the General Assembly's control of statutory classifications, the majority has gone much too far in holding the act in question manifestly unconstitutional. It may be, but there is inherent in the legislative action a finding that the classification was appropriate and warranted. There is too much that we do not know to warrant an arbitrary declaration that the act is local and special. Does this judge preside over trials of both civil and criminal cases? If so, a case coordinator would have more burdensome duties and greater responsibilities than if not. How does the number of cases usually disposed of on this judge's docket compare with the number on the dockets of other judges? How many people have been released on probation in criminal cases whose supervision is under the ultimate control of this judge? How does the pay range compare with that of like employees on the staffs of other judges? These and many other questions should be answered before this court declares such an act unconstitutional as local and special in this limited action for prohibition in a contempt proceeding.

I cannot agree that Act 629 is an unlawful delegation of legislative authority. The judge no more fixes the salary than does the Arkansas State Highway Commission or the State Board of Education who were involved in *Hooker* v. *Parkin,* 235 Ark. 218, 357 S.W. 2d 534. The holding there that the acts involved did not violate Art. 5, § 29, has nothing what-

ever to do with delegation of legislative power and nothing whatever to do with this case. Nobody has ever contended that Act 629 violates anything other than Art. 4, a contention that was also made in *Hooker* — a major detail which the majority chooses to overlook.

In *Hooker* in treating the contention that Act 200 of 1961 was unconstitutional in that it directed unlawful delegation of power in violation of Art. 4 of the Arkansas Constitution, we held that there was nothing in these powers delegated to the Highway Commission that contravened Art. 4, saying:

> *** The act establishes the maximum salaries and wages for a maximum number of employees by grades and classes. The act does permit the Highway Commission to employ a lesser number of employees and to pay less than the maximum salaries and wages to employees in the various grades and classes. The need for employees and the salary or wage deserved by the individual employee are left for the Highway Commission's determination. The delegation of this power is necessary for the orderly and efficient operation of the Highway Department and is not repugnant to Article 4 of the State Constitution. The Legislature has the right to delegate that power to determine facts upon which the law makes or intends to make its action depend. *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W. 2d 428. In this case the facts we repeat are: first, the need for the employee, and second, the ability and efficiency of the employee.

In speaking of Act 465 of 1961, relating to the State Board of Education, we said:

> The State Board of Education is empowered to determine the need for employees and to fix the number of employees and salaries, within maximum authorizations. In this connection what we have said about Act 200 suffices here. The Governor is authorized to reduce the amount to be expended for Transportation Aid in each fiscal year. We find that his action must depend upon the facts to be determined and that this require-

ment meets the test set forth in *McArthur* v. *Smallwood,* supra, and as further set forth in *State* v. *Davis,* 178 Ark. 153, 10 S.W. 2d 513, as follows:

> "The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

We went on to point out that Art. 5, § 29 provided that the General Assembly shall fix salaries and fees of all officers in the state and that no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person. Even though it was not contended here that Act 629 violated Art. 5, § 29, what we said there would be applicable here, viz:

> Act 465 does not authorize the payment of a greater salary or fee to any employee than the amount fixed by law. We construe this provision to mean that the Legislature has the sole authority to establish the maximum remuneration to be received by any State employee and to establish the maximum number of such employees. We can find no requirement to the contrary.

Absolutely no significance was given in *Hooker* to the fact that appropriated funds were involved in treating the "salary-fixing" powers delegated to the two agencies of the executive branch of the government. Why can a judicial officer of our government *not fix salaries within a given range, if executive officers can?* In its consideration of *Hooker,* the majority has not treated the questions raised here at all.

It would be far, far better if the court would leave the answer to the question of constitutionality to another day

when the facts are before us. We avoid questions as to constitutionality of statutes when it is possible to decide a case without deciding them. *McNew* v. *McNew,* 262 Ark. 567, 559 S.W. 2d 155; *Osage Oil & Transportation, Inc.* v. *City of Fayetteville,* 260 Ark. 448, 541 S.W. 2d 922; *Bell* v. *Bell,* 249 Ark. 959, 462 S.W. 2d 837; *Satterfield* v. *State,* 245 Ark. 337, 432 S.W. 2d 472. Under our holding in *Bell,* the majority's treatment of the constitutionality of the act is "pure *dictum.*" The *Bell* holding is exceptionally applicable to this case which involves prohibition in a contempt proceeding.