## Mandel vs. Peet, Simms & Co.

The defendant in a suit by attachment will not be allowed to call in question the truth of the affidavit on which the writ of attachment issued. (*Taylor vs. Ricards & Hoffman*, 4 *Eng, Rep.* 378.)

Under the provisions of the Statute (*ch.* 17 *Dig.*,) an attachment may be issued as well against a defendant, who is a non-resident of this State, or who is about to remove out of this State, or who is about to remove his goods and effects out of this State, or who so secretes himself that the ordinary process of law cannot be served on him, as against absent or absconding debtors—the grounds specified in the third section being cumulative of those named ia the first.

The word " absent" in the first section of the act should not be taken or understood in its literal sense; but as intended to mean those who have absconded or are non-residents—mere absence from the State temporarily, on business or pleasure, not being within the mischief of the act.

It is not necessary that the affidavit for an attachment, when made by a person other than the plaintiff, should state that the affiant made it *for the plaintiff*.

An affidavit that the defendant "has been removing part of his goods and effects out of this State, and is about to remove the remainder of his goods and effects out of this State," is sufficient under the Statute of attachment.

A plea in abatement that "it is not stated in the attachment bond filed in the suit, that the Peet, Simms & Co., therein named, are Eleazer Peet, Philip Simms and John Lorathe, the plaintiffs named in the declaration," held frivolous.

So also, a plea that " it does not appear that the bond filed in the suit was ever duly approved by the clerk before the issuance of the writ of attachment"—the endorsement of approval upon the bond being merely one of the means of proving the fact, and though a duty on the part of the clerk, not essential to the legal rights of the defendant.

So also, a plea averring " that the bond for costs filed in the suit describes it as an action of debt;" but that it is an action of *debt by attachment.*

The bond for costs required to be filed by a non-resident, before the institution of his suit, was made payable to the defendant by the given name of *Hermant* instead of *Herman,* his true name; *held* that the variance was not sufficient to abate the suit— the defendant having a legal remedy upon the bond by proper averments and proof. (5 *Ark* 236; 14 *ib.* 627; 1 *Eng.* 70.)

Where the affidavit in an attachment suit describes the plaintiffs as *Peet, Simms & Co.,* and the writ describes them as *Eleazer Peet, Philip Simms and John Lorathe, partners, etc. under the name of Peet, Simms & Co.,* there is no such variance as will abate the writ.

A plea in abatement must exclude every conclusion against the pleader: and so a plea that the person who signed an attachment bond for the plaintiffs, had no competent authority from them to make it, is defective, unless it also avers that the act was not subsequently adopted and ratified by the plaintiffs. (*Taylor vs. Ricards & Hoffnan,* 4 *Eng.* 378.)

It is not necessary that the plaintiffs in an attachment suit should execute the bond required by the Statute: if a bond, good in form, for a sufficient amount, and payable to the defendant, be filed and approved by the clerk, though executed by others than the plaintiff, it is sufficient.

The power of amendment is within the discretion of the Court. (4 *Eng.* 211; 16 *Ark.* 121.) And so, where the clerk approves and files an attachment bond, but fails to endorse upon the bond his approval before the issuance of the writ, the Court may direct him to make such endorsement: And so also, where there is an error in the bond for costs required to be filed by a non-resident before bringing his suit, in the name of the obligee, the Court may permit the obligor to amend the bond by inserting the true name of the defendant.

It is error in the Circuit Court to proceed to render final judgment until all the issues raised or tendered in the cause are disposed of. (4 *Ark.* 527; 5 *ib.* 197; 14 *ib.* 621; 4 *Eng.* 67.)

*Writ of error to the Circuit Court of Jefferson county.*

The Hon. THEODORIC F. SORRELS, Circuit Judge.

BELL & CARLTON and JOHNSON, for the plaintiff.

CUMMINS and GRACE, for the defendants.

Mr. Justice HANLY, delivered the opinion of the Court.

This was debt by attachment, brought by Peet, Simms & Co., against the plaintiff in error, in the Jefferson Circuit Court, on a promissory note. The declaration is in the usual form, and is not involved in the enquiry invited by the assignment of errors. The errors assigned relate to the affidavit on which the attachment issued, the bond for cost filed in the Court below, in consequence of the defendants in error being non-residents of this State at the time of the commencement of the suit, the attachment bond and the writ itself. At the return term of the writ, Mandel, the defendant below, appeared by counsel and interposed ten several pleas in abatement to the writ, in substance as follows:

1. That, at the commencement of the suit, the defendant was neither *absent* nor *absconding* from the State, but was a resident of the county of Jefferson in this State.

2. That it is not stated in the affidavit filed in the suit that the person who made it " made the same *for the plaintiffs.*"

3. That it is stated in the affidavit on which the attachment issued " that the defendant Mandel has been removing part of his goods and effects out of this State, and is about to remove the *remainder* of his goods and effects out of this State," and avers that that is not a sufficient ground in law for said attachment to issue.

4· That, " it is nowhere stated in the attachment bond" filed in said suit that the Peet, Simms & Co., therein named, are Eleazer Peet, Philip Simms and John Lorathe, the plaintiffs named in the declaration.

5. That, " it does not appear that the attachment bond filed in said suit was ever duly approved of by the clerk of the Circuit Court of Jefferson county before the issuance of the writ of attachment in this behalf as required by law."

6. That, " the bond for cost filed in said suit describes said plaintiffs' suit as an action of debt, and said defendant avers that said suit is an action of *debt by attachment.*"

7. That " the bond for costs filed in said suit is conditioned to pay all costs in a certain suit of said plaintiffs against *Hermant*

M. Mandel, instead of *Herman* M. Mandel, the true name of said defendant."

8. That " it is nowhere stated in the affidavit filed in said suit that said defendant is justly indebted to Eleazer Peet, Philip Simms and John Lorathe, merchants and partners in trade, doing business under the firm, name and style of Peet, Simms & Co., in the plaintiff's declaration mentioned, in any sum whatever."

9. That there is " a variance between the said affidavit and writ, in this: the affidavit describes the plaintiffs as Peet, Simms & Co., whereas, said plaintiffs are described in said suit as Eleazer Peet, Philip Simms and John Lorathe, merchants and partners, etc., under the name and style of Peet, Simms & Co."

10. That the person who signed the attachment bond for the plaintiffs had no competent authority from them to make such an instrument in their behalf at the time it was executed.

These several pleas were properly verified by the affidavit of the defendant below, Mandel, and were filed on the 12th November, 1855.

On the 13th of the same month, (Nov'r, '55,) the plaintiffs, Peet, Simms & Co., moved the Court in writing for a rule against the clerk to enter " his approval of the attachment bond filed in the cause *nunc pro tunc*," and also, for leave to the " obligor in the cost bond to amend the same by striking the letter *t* from the name of Herman*t* in the said cost bond." This motion was considered and sustained by the Court, and the desired amendments made accordingly: To which ruling, the defendant Mandel, excepted, and filed his bill embodying these facts.

On the same day that the proceedings lastly stated above were had, the plaintiffs below filed their demurrer to each of the ten pleas in abatement except the eighth one, to which they filed a replication, specially traversing the said plea, and concluding with a verification.

The demurrer to the nine pleas set out special causes for each.

This demurrer was considered and sustained by the Court as

to all the pleas to which it applied. The defendant, Mandel, declined to answer over upon the demurrer to his pleas being sustained, and the Court, on the plaintiff's filing their cause of action, proceeded to render judgment in their favor for the amount thereof with interest and costs, without disposing of the replication to the 8th plea of the defendant, or the issue thereon, if there was one, of which the transcript is silent. The defendant Mandel brought error, upon which the cause is now pending in this Court. His assignment questions the ruling of the Court below as follows:

1. In sustaining the plaintiff's demurrer to his nine pleas as above.

2. In permitting the clerk to endorse his approval upon the attachment bond.

3. And in permitting the defendants to amend their bond for cost by striking out the letter *t* from the word *Hermant*.

The demurrer of the plaintiffs below to the several pleas of the defendant, being in effect an admission of the truth of the facts therein stated, will render it unnecessary for us to state or set out the different documents to which some of them refer. We will assume, therefore, in our present enquiry, what the law intends in respect to them under the demurrer, that each plea is true in point of fact. With this explanation, we will at once proceed to consider the several errors assigned by Mandel in the order in which they are presented.

I. The first assignment questions the propriety of the ruling of the Court below upon the demurrer of the plaintiffs Peet, Simms & Co., to the nine pleas in abatement, interposed by the defendant Mandel. We will, therefore, for the sake of perspicuity, dispose of this assignment by considering the demurrer as applied to each plea separately in their order on the record, and as we have stated them above.

*First.* The matter of this plea may be considered in two aspects. It may be regarded as an attempt on the part of the pleader to draw in question the truth of the affidavit on which the attachment was issued: which, of course, is not allowable, either under our statutory enactments on the subject, or the

practice of the Courts founded thereon: (See *Taylor vs. Ricards & Hoffman,* 4 *Eng. R.* 378;) or it may be viewed as asserting the principle that the attachment law of this State only authorizes attachments to issue in case the debtor is *absent* or *absconding.* We will consider the plea in this view. Very elaborate and extended arguments have been submitted on the part of the plaintiff in error, in support of this latter position, which we have considered with much deliberation and great care, on account of the confidence manifested by counsel that their position in this respect would be found sustained by both the reason and letter of the law. The first section of the attachment law is in these words: " In all cases of absent or absconding debtors, who may have property, real or personal, in this State, the creditor may proceed against the same in the following manner, *to wit:* The second section directs that the creditor shall file in the office of the clerk of the Circuit Court of the county wherein the property may be, his declaration, etc. The third section being immediately involved in the question directly at issue, we will copy. It is as follows: " The creditor shall, at the time of filing the declaration of his claim, also file an affidavit of himself, or some other person for him, stating that the defendant in the declaration or statement mentioned is justly indebted to such plaintiff in a sum exceeding one hundred dollars, the amount of which demand shall be stated in such affidavit, and also that the defendant is not a resident of this State, or that he is about to remove out of this State, or that he is about to remove his goods and effects out of this State, or that he so secretes himself that the ordinary process of law cannot be served on him." See *Digest sec.* 1, 2, and 3, *p.* 172.

There has been no positive adjudication consistent with the position contended for by the plaintiff in error, as far as we have been able to discover after a strict and careful examination of all the volumes of our Reports: but there are a multitude of cases in which this Court has impliedly held that there are other grounds authorizing the issuance of attachments beside the two specified in the first section, which we have copied above, and that those other grounds are defined and de-

signated in the third section, which we have also copied, and we think the question thus settled is entirely consistent with the general tenor and scope of the entire chapter, and accords with the uniform practice which has grown up throughout the State upon the subject. We would not feel ourselves authorized to disturb the practice of the Courts, for a long time acquiesced in, without we could be convinced that the practice itself violated some positive Statute, or was antagonistic to a known principle of the law. We will, however, examine the subject a little farther, with the view of expressing ourselves with more distinctness, and with the hope that the grounds of our decision in this cause may not be misunderstood or misinterpreted.

It is true that the proceeding authorized under our attachment law is in derogation of the course of proceedings warranted by the common law, and should therefore receive a strict construction, and the statutory requirements be rigidly pursued. Yet, in the language of Walker, J., in *Taylor vs. Ricards & Hoffman*, 4 *Eng. R.* 384: " there is a common sense view of this and all other acts, whether in derogation of the common law remedies or not, that should not be lost sight of, for it is not unfrequently the case that Courts, by adopting this familiar and well recognized rule, feel that their sphere of action is so circumscribed as to force them into refined and unmeaning technicalities, such as defeat every valuable purpose of our most important and useful statutes." It is admitted that there seems, upon the first impression, to be a discrepancy between the provisions of the first and third sections stated above, in this, that the language of the first section would only seem to warrant the issuance of an attachment in case the debtor was either *absent*, having *absconded*, or was in the act of *absconding* from the State; whilst the third section provides with equal distinctness for other grounds in addition to those named in the first section, authorizing the issuance of an attachment; that is to say: 1. That the debtor is not a resident of this State; 2. That he is about to remove out of this State; 3. That he is about to remove his goods out of this State; and 4. That he so secretes himself that the ordinary process of the law cannot be

served on him.   We have said the four grounds specified in
the third section are cumulative of those named in the first,
and the letter of the statute will bear us out in this view.
Take, for example, the first ground in the third section—that
the debtor is not a resident of this State—that is not provided
for in the first section, for the reason that a person residing out
of the State may yet be *present in it,* or in other words not *ab-
sent from it,* and at the same time not be *absconding* (or hiding)
during his sojourn in the State.   And so in reference to the
second ground in the third section: One may be *about to remove
out of* the State, which, *ex vi termini,* pre-supposes his presence
in the State, and consequently not *absent from it,* and at the
same time, not be in the act of absconding, for the reason that
one *about to remove* may arrange and prepare to do so *publicly*
and not in a *clandestine* manner, as is meant by the word *ab-
scond.*   The third ground in the third section is as manifestly
cumulative as the two preceding; for, we hold that one "*about
to remove his goods and effects out of this State*" may yet be *pre-
sent* in, or not *absent,* or *absconding* from the State.   And so,
finally, in reference to the fourth and last ground in the third
section; for one may not be *absent* or *absconding* from the State,
and yet "*so secrete himself that the ordinary process of the law
cannot be served on him.*"

We do not desire to be understood that the word "*absent*" in
the first section should be taken or understood in its literal
sense, for we will not presume the legislature intended any
such application.   What we understand by the word "*absent*"
in this section is, that the debtor should not only be *absent,* but
that he must have *absconded,* or else be a *non-resident.*   Mere
absence from the State temporarily, on business or pleasure,
certainly would not fall within the mischief of the act, and
consequently could not be intended as having been meant by
the legislature.   We have examined the several adjudications
to which we have been referred by the counsel for the plaintiff
in error, and do not believe they militate against the views
herein expressed.   We are therefore, forced to the conclusion

that the demurrer to the first plea was properly sustained by the Court below.

*Second.* The matter of this plea we esteem as altogether frivolous. It is a matter of formal consequence whether the affidavit does or does not show whether the person who made it, made it *for the plaintiffs.* Whether it is or is not so stated, it will be so intended, for it is not presumed that one in no wise interested in the suit would make such an affidavit without it was done by him as the agent of the party in interest, or done *for him,* for accommodation. A literal compliance with the requirements of the statute is not expected or demanded. All that is expected in such case is a substantial compliance with the requirements of the statute. See *Cheadle vs. Riddle,* 1 *Eng. R.* 483. We hold, therefore, that the judgment of the Court below on the demurrer to this plea, was proper.

*Third.* The demurrer to this plea was also properly sustained, for the reasons we have already expressed in considering and treating of the demurrer to the first plea, and for the additional reason that we conceive the affidavit substantially states that the defendant was about to remove *all his goods and effects from the State*—being a ground provided for the issuance of an attachment under the third section, as before ruled. The stating that the defendant "*had removed part*" and was *proceeding,* or "*was about to remove the remainder of his goods and effects from this State*" we conceive is tantamount to saying that he was *about to remove his goods and effects, etc.* The word *remainder* used in the affidavit, is as comprehensive as *all his goods, etc.,* or *his goods, etc.*

*Fourth.* This plea we also consider frivolous in matter, for the reason that it will be intended that the persons named in the attachment bond are identical with those named in the declaration and affidavit. The principle settled in *Whitlock et al. vs. Kirkwood,* 16 *Ark. R.* 490, and *Ellis vs. Cossitt et al.,* 14 *Ark. R.* 222, is decisive of this case.

*Fifth.* The matter of this plea is considered *thoroughly* frivolous, for the reason that the law does not require that it should appear on the bond itself, that it was approved by the clerk

before he proceeded to issue the writ of attachment. All that the law requires is, that it should be approved by the clerk. His endorsement of his approval is a means of evidence of that fact. But we apprehend this evidence may be furnished by other means. If the plea had denied the fact of its approval, this would have been a material fact, and the plea would have been good if properly framed. Notwithstanding we hold the attachment bond good in this instance, we must, nevertheless, be permitted to deprecate the practice on the part of clerks of omitting to endorse their approval on bonds in such case, and take the liberty of respectfully recommending to them in all such cases to make such endorsements with the view of perpetuating the evidence of the fact. In view of the foregoing considerations we hold that the Court below properly sustained the demurrer of the plaintiffs to the fifth plea of the defendant.

*Sixth.* The demurrer to this plea was unquestionably correctly sustained by the Court below. The objection taken to the bond for costs is a refinement upon technicality in advance of anything of the kind we have ever observed, and utterly at war with the liberal practice which is inculcated by the letter and spirit of our law, which seems to regard the substance rather than the shadow, the attainment of justice rather than its defeat or procrastination.

*Seventh.* It is true, the statute requires the bond for costs to be given by the plaintiff and payable to the defendant, but the slight variance in the christian name of the defendant, suggested by this plea, would certainly not be sufficient to abate the suit. The bond being filed with, and found among, the papers of the suit, would be intended to apply and belong to it. In case it should become necessary to sue on that bond, the defendant, by proper averments in his declaration, and proof consistent with those averments, would experience no difficulty in the Courts in obtaining judgment on the instrument. See *Bower et al. vs. State Bank,* 5 *Ark. R.* 236. *Nicholay et al. vs. Kay,* 1 *Eng. R.* 70. *Allis vs. Bender,* 14 *Ark. R.* 627.

We hold, therefore, that the Court below did not err in sus-

taining the plaintiff's demurrer to the defendant's seventh plea.

*Ninth.* The question involved in the demurrer to the ninth plea has already been determined in this cause, whilst we were considering the demurrer to the fourth plea. See also *Cheadle vs. Riddle,* 1 *Eng. R.* 483, before cited. As we held in respect to the demurrer to the fourth, so we hold in respect to this—that there is no error in the judgment of the Court below, sustaining it.

*Tenth.* This plea is obnoxious to the demurrer on two accounts. 1. Because it might be true that Beaman, who made the attachment bond in the name of the plaintiffs, had no competent authority to do the act at the time, yet the act of Beaman may have been subsequently ratified by the plaintiffs; which would make the deed as effectually theirs in law, as though they had given authority to the agent in the first instance. The rule in such case is, that a plea in abatement must exclude every conclusion against the pleader; therefore, a plea that plaintiff's name was signed to the attachment bond by one without authority, must negative the ratification of the act by the plaintiffs, before the writ issued. See *Taylor vs. Ricards & Hoffman,* 4 *Eng. R.* 378. 2d. Because the fifth section of our attachment law does not require the bond filed to be the bond of the plaintiffs. If it is properly conditioned, for a sufficient amount, payable to the defendant, and approved by the clerk, the law is complied with. If it was true, as the pleader seems to indicate by his plea, that Beaman had no authority to make the bond in the names of the plaintiffs, and if it were true, and the fact had been averred in addition, that the act of Beaman unauthorized in the first instance had not been ratified by the plaintiffs, yet the bond would not be rendered invalid. It would be the bond at least of Beaman and the securities, if no one else, and the law thereby complied with. See *McMechan vs. Hoyt,* 16 *Ark. R.* 306. For these reasons we hold the demurrer to this plea properly sustained.

Having thus disposed of all the questions raised by the first

assignment, we will at once proceed to consider the other assignments.

II. This assignment questions the propriety of the ruling of the Court below in requiring the clerk to endorse his approval upon the attachment bond, after the interposition of the plea in abatement, averring a want of such endorsement. We have already, whilst considering the first assignment, virtually disposed of this; holding, as we have, that the endorsement of the approval of the attachment bond by the clerk was not essential; that the endorsement was only evidence of the approval, or one of the means of evidencing that fact. The order of the Court requiring the amendment, and the absolute amendment by the clerk in the manner suggested did not and could not possibly have affected the defendant below. But, outside of this view, we are of the opinion that the Circuit Court had the unquestionable power to authorize the amendment, and that that power was exercised under circumstances warranted and authorized in law, for the furtherance and attainment of justice. See *Hughes vs. Stinnett's adr.*, 4 *Eng. R.* 211. The power to amend and allow amendments is a power inherent in the Courts. The power is unlimited with one or two exceptions. Applications to amend are addressed to the sound discretion of the Judge, except in the limited instances, and his action upon those applications is final, not being subject to review by an appellate Court. See *Pennington et al. vs. Ware & Miller*, 16 *Ark. R.* 121. We hold, therefore, there is no error in respect to this assignment.

III. We have already held that the amendment, which the obligor in the cost bond was permitted to make by striking out the letter *t* from the name of Herman*t*, was an immaterial amendment, and did not affect the defendant or his rights in the least. The amendment was permitted, to prevent, as was evidently conceived, a technical objection defeating the ends of justice. We hold in respect to this, as we did in reference to the second assignment—that the Court below did not err in permitting the amendment.

We have thus consecutively disposed of the three assign-

ments, and have found in them no errors which are material. But by reference to our statement of the case, it will be perceived that the Court below proceeded to, and did render final judgment for the plaintiffs without disposing of the eighth plea or the issue formed thereon, if there was one, but of which the transcript is silent. After disposing of the demurrer to the nine pleas in abatement, and after the defendant had declined to *answer over* as to them, the Court below should have proceeded to require the parties to make up an issue on the eighth plea, and then have determined or disposed of that issue, or else have proceeded to dispose of the pleading upon that plea without an issue, by rendering judgment against the party in default by *nil dicit*, according to the uniform rules of practice in such cases. It was certainly irregular for the Court to have proceeded with the case to final judgment until all the issues raised or tendered, were determined. See *Hicks vs. Vann*, 4 *Ark. R.* 527. *Reed et al. vs. State Bank*, 5 *Ark. R.* 197. *Hammond vs. Freeman*, 4 *Eng. R.* 67. *Yell Govr. use Conant & Co. vs. Outlaw et al.*, 14 *Ark. R.* 621.

For this error, we shall have to reverse the judgment of the Court below, and remand the cause to the Jefferson Circuit Court to be proceeded in, etc.

Absent, Hon. C. C. Scott.