REAMEY *v.* WATT
5-3515                                   403 S. W. 2d 102
Opinion delivered May 23, 1966
Amended opinion delivered June 6, 1966

*Arnold & Hamilton,* for appellant.

*W. P. Switzer, James M. Barker, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. The issue in this litigation is the validity of an election in Ashley County on the question of adopting a stock law. Preparatory to holding such an election, a group of citizens sponsored circulation throughout the county of petitions as a matter of obtaining sufficient signatures to place this proposal upon the ballot. One hundred and seventy-four petitions, bearing approximately twenty-five hundred signatures, were filed in the office of the County Clerk on August 31, 1964. On that same date, the Ashley County Court entered an order directing that the ballot for the general election should contain the proposal for the stock law.[1] On October 10, 1964, appellees instituted an action in the Ashley Chancery Court, seeking to restrain appellants (the election commissioners of Ashley Coun-

[1] All townships in the county were included except one, Bayou.

ty) from placing this issue on the ballot. By amendment, appellees attacked the sufficiency of the number of petition signers, the form of the petitions, and the validity of the County Court order of August 31, 1964, wherein the election was called. The Chancellor temporarily enjoined appellants from placing the question on the ballot in Banner, Prairie, Beech Creek, Elon, Marie Saline, Mill Creek, Longview and Bearhouse Townships in the county, and also enjoined appellants from certifying results of any ballots cast in these particular townships. Appellants appealed to this court, and we entered an order on November 2, 1964, modifying the injunction to permit the holding of the election, but not rendering moot the question of the validity of the petitions; also, we directed that the Ashley Chancery Court could hear and determine all issues in the case, as though temporary proceedings had not been held. At the general election, the proposed stock law carried by a large majority, and thereafter the Chancery Court proceeded to hear the case, as permitted by the order of this court, heretofore referred to. At the conclusion of the trial, the court found that the petitions and order approving the election did not meet the jurisdictional requirements of the law authorizing such elections, and the petitions and order were held void. The court however, found that appellees had not sought relief for any townships, except those earlier mentioned in this opinion, along with Township "Extra," and that accordingly, appellants should be directed to certify the vote of the election in the other townships in the county[2]. From the decree entered in accordance with these findings, appellants bring this appeal.

The controlling statute in this litigation is Ark. Stat. Ann. § 78-1401 (Repl. 1957). The section provides as follows:

"Whenever twenty-five per cent (25%) of the qualified electors of three (3) or more townships in a body in any county in this state as shown by the election returns for Governor at the last General Election preced-

---

[2]Union, Montrose, Portland, DeBastrop, Egypt, White, Carter, and Wilmot Townships.

ing the date of the petition, shall petition the County Court for the privilege of voting on the question of restraining horses, mules, asses, cattle, goats, swine and sheep or any two (2) or more of said animals or the male species thereof from running at large, the County Court shall make an order for an election in said townships to be held at any General or Special Election for State or County officers; and provided that if petitioners shall file with their petition proper bond to be approved by the Court conditioned to pay all the cost and expense of a Special Election, the County Court may call an election at any time upon the filing of such petition by giving notice thereof as now provided by law for General Elections; and provided further that said petition shall contain twenty-five per cent (25%) of the qualified electors residing within each township mentioned in said petition."

Appellants complain that the Chancellor's finding of invalidity was based on the fact that the petitions calling for the election, made reference to the voting precinct of the signers, rather than the political township, and that language, denoting compliance with the statute, was not set forth in the petitions and order.

Appellants vigorously urge that the petitions and court order contain sufficient recitals of jurisdictional facts to make them valid, and that the order specifically states, "that the petitions as filed do contain the required number of signatures for each and every township in Ashley County, Arkansas, except Bayou Township),'' and that this order is presumed to be correct unless it is affirmatively shown that the order is erroneous.

It is not necessary that we discuss whether the petitions and the county court order must recite specifically the requirements of the statute, setting out that these had been complied with, in order for the court to have jurisdiction, for we think the evidence reflects that the findings recited in the order are erroneous. Irrespective of the reason set forth by the trial court as the basis for its decision, even though such reason be erroneous, we will not reverse, if the decision reached by the trial

court is correct. See *Southern Farm Bureau Casualty Insurance Company* v. *Reed,* 231 Ark. 759, 332 S. W. 2d 615, and cases cited therein.

The County Judge stated that he did not use a map in making the order, and further testified that he could only recognize the boundaries of the various townships by looking at a map. When asked from what information he made the finding that the required number of signatures were on the petition, the judge replied, "I took the word of the attorneys that filed the petition that they had the required number of signatures." The judge evidently made no examination himself to ascertain whether 25% of the qualified electors in each township had signed the petitions. This testimony of the witness, in itself, was sufficient to show that there was no proper determination that an adequate number (of electors) had signed. In addition, several witnesses testified that, in the check of particular townships, it was determined that 25% of the qualified electors had not signed the petitions.[3] We think the evidence shows that the petitions did not contain signatures, in conformity with the provisions of the statute, and the filing of petitions with the required number of signatures is jurisdictional. See *Wright* v. *Baxter,* 216 Ark. 880, 227 S. W. 2d 967, and cases cited therein.

Appellants attack the proof offered on this point, asserting that the witnesses based their opinion on a township map, which was not established to be correct.[4] However, appellants admit that the signatures were not acquired on the basis of the electors' township residence, but rather, were obtained on the basis of the signers' voting precinct. In fact, there is no place on the petitions for a person to designate his township, but a place only to designate the voting precinct. It appears that,

---

[3] Henry Austin, a resident of Prairie Township, testified that 125 electors lived there, and only 18 had signed the petitions. Devereax Brown, a resident of Longview Township, testified that there were 154 qualified voters in the township, and only 21 had signed the petitions. Witnesses also testified similarly, concerning some other townships.

[4] Both the County Judge and Irene Riley, employed in the County Assessor's office, testified that they considered the map correct.

for a long number of years, the voters of Ashley County have voted entirely by precinct, without reference to their township; many citizens vote in precincts that are not located within the townships in which they live. Appellants assert in their brief that, under the circumstances, they have followed the only procedure available, and they argue that the court's holding was based on a "technicality." We do not agree. The statute very plainly provides that the petitions shall contain the names of "twenty-five per cent of the qualified electors residing within each township." Of course, a statute cannot be ignored simply because a county's voting procedure is set up in a manner that precludes an election under that statute. Any relief along that line addresses itself to the Legislature.

Nor are appellants entitled to relief because, by custom, they have, in conducting elections, ignored township lines for a long period of time. Custom and usage are not sufficient to override the clear wording of the statute. *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499.

Appellants do allege one point which contains merit. It is asserted that the Chancery Court was without authority to uphold a portion of the County Court order, and hold the remainder invalid. This argument has reference to the fact that the election was voided only in the contested townships, and appellants were authorized to certify the vote of the election in Union, Montrose, Portland, De Bastrop, Egypt, White, Carter and Wilmot Townships. The Chancellor based his action on the fact that appellees did not seek any relief in the townships just named. Appellants contend that in holding the order partly valid, and partly invalid, the Chancellor has actually amended the County Court order—which he had no authority to do.

We agree that this constituted error. In *State* v. *Phillips,* 176 Ark. 1141, 5 S. W. 2d 362 (a stock law case), we said:

"It is claimed, however, that this defect in the order of the county court was cured by the decree of the chancery court restraining the holding of the election in Greenfield Township. We do not agree with this conten-

tion. The chancery court had jurisdiction to restrain the election because it was made upon a void order, but it had no jurisdiction to cancel or amend the order of the county court. As we have already seen, the order of the county court must be based upon the petitions filed; and it was void because the order as made was not based upon the petition of the requisite number of qualified electors as provided by statute. No subsequent decree of the chancery court could give validity to the order of the county court."

This holding is entirely practical, since it cannot be assumed that persons would have voted for the stock law if they had known that it would not include the entire county. It follows that that portion of the decree, authorizing the certification of the votes in the uncontested townships must be reversed, and it is so ordered.

It is regrettable that the will of the people, as expressed in the election, cannot be carried out, but this court is without authority to enact law; we can only interpret the law as expressed by the Legislature. Act 368 of 1947 (Section 78-1401) clearly and unequivocally provides that efforts to obtain an election creating a stock law district are commenced by the petition of 25% of the qualified electors, residing within each *township* affected.

Affirmed in part; reversed in part.