## BOARD OF EQUALIZATION, WASHINGTON COUNTY v. EVELYN HILLS SHOPPING CENTER ET AL

5-5821                                          476 S.W. 2d 211

Opinion delivered February 21, 1972

*Ray Thornton,* Attorney General; By: *Henry Ginger,* Deputy Atty. Gen. and *Mahlon Gibson,* Prosecuting Attorney, for appellant.

*F. H. Martin* and *Ball & Gallman,* for appellees.

CONLEY BYRD, Justice. Appellees Evelyn Hills Shopping Center, Inc., and Plaza Shopping Center, Inc., being dissatisfied with their 1970 property assessments and having pursued their remedies through the Washington County Equalization Board and the County Court without relief, appealed to the Washington County Circuit Court. The matter was tried to the Circuit Court without a jury on April 13, 1971, during the October 1970 term of court.

B. A. Shamblin testified as an expert for the property owners. He fixed his valuations using the "income approach" at $448,974.00 for the Plaza Shopping Center and $1,302,866.16 for the Evelyn Hills Shopping Center. In support of the proposition that his income approach more nearly reflected the true or market value of property than the "cost less depreciation" approach used by the Equalization Board, Mr. Shamblin pointed out that

some Safeway property assessed by the Board on the basis of a value of $175,000 sold on the open market for only $130,000.

Harold Duggar, director of appraisal and evaluation for the Equalization Board, testified for the County and took the position that by Act 153 of 1955, the Equalization Board is required to use the "cost less depreciation" method selected by the Public Service Commission and State Coordination Department. On this basis Mr. Duggar arrived at a value of $1,560,000 for Evelyn Hills Shopping Center and $512,100 for Plaza Shopping Center.

The trial court entered a judgment on April 15, 1971, fixing the value of Evelyn Hills at $1,350,000 and Plaza Shopping Center at $475,000. In doing so the court accepted Mr. Shamblin's "income" approach but made some adjustments for rental overrides not considered by Mr. Shamblin. After the Washington County Board of Equalization had filed notice of appeal and the October 1970 term of court had lapsed, the appellees on October 1, 1971, filed their "First Amendment to Petition" claiming for the first time that Act 153 of 1955 violated certain sections of the State and Federal Constitutions. On the same day the trial court amended the original judgments to hold that Act 153 of 1955 was unconstitutional.

We do not reach the constitutional arguments here made because the trial court after lapse of the October 1970 term of court had no jurisdiction to amend the judgment to grant any additional relief. In *St. Louis & N. A. Rd. Co.* v. *Bratton*, 93 Ark. 234, 124 S. W. 752 (1910), we pointed out that there is no authority after term time for a trial court, under the guise of an amendment, to revise a judgment to adjudicate a matter which might have been considered at the time of the trial or to grant an additional relief not in contemplation of the court at the time the judgment was entered. This is in accord with our long standing rule that constitutional issues will not be determined unless their determination is essential to disposition of the case, *Martin* v. *State*, 79 Ark. 236, 96 S. W. 372 (1906), and *Bell* v. *Bell*, 249 Ark. 959, 462 S. W. 2d 837 (1971).

Appellant also argues that the trial court erred in basing its decision upon values reflected by the capitalization of income method. There is no merit in this contention. In the first place, Ark. Stat. Ann. § 84-477 (Repl. 1960) specifies that property is to be assessed at 20% of its full or market value. In the next place, the Assessment Coordination Department manual specifically provides: "It is intended for this manual to be considered and used only as a guide in determination of actual values of real properties." In *Kitchens* v. *Arkansas Appraisal Service*, 233 Ark. 384, 344 S. W. 2d 853 (1961), we held that the assessor's manual prepared by the Assessment Coordination Department was not an iron clad rule to be followed with no deviation. Competent experts in the real estate field use three methods to arrive at true or market value—*i. e.*, (1) comparable sales, (2) capitalization of income and (3) cost less depreciation. In the use of any one of the three methods there are certain inherent weaknesses. In the eminent domain cases that come before this court, the better appraisers often use a combination of two or more of the methods as a check on their final value opinions. As pointed out in the *Kitchens* case, "No element is more important in assessing than the good judgment of the assessor, irrespective of compiled standards."

So much of the judgment as holds Act 153 of 1955 unconstitutional is set aside. As modified the judgment is affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I agree with the result and with most of the statements in the majority opinion. As I have previously pointed out, I do not feel that expert appraisers are restricted, as a matter of law, to only three methods of determining market value. See concurring opinion, *Arkansas Highway Commission* v. *Roberts*, 246 Ark. 1216, 441 S. W. 2d 808, 1224.

I would affirm for an additional reason not mentioned in the majority opinion. The language of Section 5, Act 153 of 1959, which appellee contends makes the use of the manual by boards of equalization and county

courts mandatory, does not, in my opinion, do so. The pertinent part of the statute reads:

> It shall also be the duty of the County Equalization Boards, in performing their duties, to recognize and follow such manuals and standards, and the County Equalization Boards shall not change an assessment made by the County Assessor unless such change is necessary to provide uniformity in the assessment of similar classes of property. It shall also be the duty of the County Judges, in hearing appeals from the County Equalization Boards, to recognize and follow such manuals and standards, and a County Judge shall not change an assessment unless such change is necessary to provide uniformity in the assessment of similar classes of property.

This statute, in my opinion, does not bind either the equalization board or the county court to a rigid application of the manual, but permits resort to other evidence to determine whether a change in a particular assessment is necessary to provide uniformity in the assessment of *similar classes* of property. The use of the words "recognize and follow" should not be taken to require such a blind adherence as would give rise to an irrebuttable presumption that the assessment made according to the manual was an absolutely correct determination of the "true and full market or actual value" required by the act, in spite of evidence that such a slavish adherence brought about an assessment on the property which was not uniform with assessments of similar classes of property. In my opinion, this part of the statute does nothing more than make an assessment according to the manual prima facie evidence of "true and full market or actual value" and the burden of showing that the particular assessment is not uniform with similar classes of property lies upon one attacking it.

For the reason stated, I would hold that the same result would be reached if the manual did not contain the statement referred to in the majority opinion.