G.A.C. TRANS-WORLD ACCEPTANCE CORPORATION *v.* JAYNES ENTERPRISES, INC., D/B/A JAYNES MOBILE HOMES ET AL

73-165                                            502 S.W. 2d 651

Opinion delivered December 17, 1973

*Fitton, Meadows & Adams,* for appellant.

*Bill F. Doshier,* for appellees.

CONLEY BYRD, Justice. At issue here is the constitutional validity of Ark. Stat. Ann. § .31-501 (Repl. 1962), in so far as it authorizes a pre-judgment garnishment without notice. The trial court, relying upon *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969), held the statute void in so far as it authorized the issuance of a garnishment by a clerk without notice and prior to judgment. For reversal appellant, G.A.C. Trans-World Acceptance Corporation, points out that the garnishment here involved is against certain accounts receivable due to appellee, Jaynes Enterprises, Inc., a business corporation and contends that the holding in *Sniadach* v. *Family Finance Corp., supra,* is limited to wages.

In making its argument appellant recognizes that the United States Supreme Court in *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), has construed the *Sniadach* case contrary to its contentions. However, it says that since the *Fuentes* case is only a four to three decision with two justices not participating, there is a question as to its effectiveness as a precedent. Cases from other jurisdictions have gone both ways upon the contentions made. *Roofing Wholesale Co., Inc.* v. *Palmer,* 108 Ariz. 508, 502 P. 2d 1327 (1973), would support appellant's position. *Etheredge* v. *Bradley,* 502 P. 2d 146 (Alas. 1972), supports the trial court's position. There are some dissenting opinions in both cases.

For a number of reasons, we are inclined and do accept the interpretation of the *Sniadach* ruling as set forth in the *Fuentes* case until such time as the United States Supreme Court rules to the contrary. Some of such reasons are:

1. Other decisions of the United States Supreme Court such as *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1969), and *Bell* v. *Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1970), have extended the same Due Process principle of notice and a fair hearing to welfare rights and the suspension of a driver's license;

2. It is most illogical to say that the Due Process Clause of the Fourteenth Amendment requires notice and an opportunity to be heard only when dealing with wages, welfare rights and drivers licenses but that no such notice and an opportunity to be heard are prerequisites to depriving a citizen of any other property or rights that he may possess;

3. The statute in question is admittedly void as to wages and is not necessarily severable so as to remain valid to other assets; and

4. The General Assembly, following the *Fuentes* case, has by Act 144 of 1973, enacted a rather practical procedure for giving of notice to defendants

against whom a writ of replevin is sought—inferentially it would not be impossible to make a similar provision with respect to garnishment proceedings.

Finally appellant argues that the appellees, Jaynes Enterprises Inc., d/b/a, Jaynes Mobile Homes, Bill Jaynes and Violet Jaynes, waived any right to a prejudgment hearing by signing a guaranty giving the appellant, in case of default, the right to take possession of contract rights and/or accounts or proceeds of the sale thereof wherever found and giving it the right to enter for such purposes without legal process. We find no merit to this contention. (1) The waiver contention under a somewhat similar contract was held not to preclude a preseizure hearing in the *Fuentes* case, *supra.* (2) This issue was not raised in the trial court and cannot be raised for the first time on appeal. (3) Furthermore, appellant did not rely upon the provision of its contract but invoked the aid of the court under the garnishment statute.

Affirmed.

GEORGE ROSE SMITH, BROWN and FOGLEMAN, JJ., concur.

JOHN A. FOGLEMAN, Justice, concurring. I fully concur in the result reached by the majority, but for a totally different reason, which would avoid the necessity of ruling upon the constitutionality of Ark. Stat. Ann. § 31-501 (Repl. 1962) insofar as it provides for prejudgment garnishment. I shall first state my reasons for concurring in the result after which I will state my reasons for feeling it is extraordinarily important for this court to follow its usual rule in respect to considering constitutionality of statutes.

The writ of garnishment in this case was issued and served on March 13, 1973, the date of the filing of the complaint. The bond required by Ark. Stat. Ann. § 31-501 in cases of prejudgment garnishment was executed and filed on April 11, 1973, one day prior to a hearing in the Chancery Court of Boone County, in which the

suit was originally filed. That hearing was on appellees' demurrer, which was then treated as a motion to transfer the action to the circuit court, and, as such, granted. On April 16, appellees filed their demurrer and their motion to quash the writ of garnishment, both based, in part, upon the contention that the writ was void because the bond was not filed until after the writ was issued and because its penalty was not double the amount for which the garnishment was issued.

We have never directly ruled that the failure to post a bond will require a writ of garnishment to be dissolved. We have, however, said the failure to give bond, standing alone, is not a ground of demurrer to the complaint in the principal action, but is sufficient cause for quashing an attachment upon motion to quash or set aside the order of attachment. *Alexander* v. *Pardue,* 30 Ark. 359. While the defect may be waived by the defendant in the action in which an attachment is issued, this court has clearly taken the position that an attachment issued without a bond having been made should be dissolved upon motion of the defendant, even though the court found it unnecessary to determine whether the failure to file the attachment bond was a mere irrgeularity or a jurisdictional error rendering a judgment in attachment void. *Austin* v. *Goodbar Shoe Company,* 60 Ark. 444, 30 S.W. 888. There we said:

> Now, from what has been said, we are of the opinion that the want of a bond was such an error—"jurisdictional error," if that is a better expression of it— as that, upon motion of the defendant during the pendency of the proceeding, and before judgment, the attachment would necessarily be dissolved; * * *.

The analogy between prejudgment attachment and prejudgment garnishment is great. See Comment, Garnishment Before Judgment in Arkansas, George B. Collins and J. W. Steinsiek, 8 Ark. L. Rev. 121; Case note, Constitutional Law-Prejudgment Garnishment of Wages, 23 Ark. L. Rev. 660, James E. Darr; *Foster* v. *Pollack Company,* 173 Ark. 48, 291 S.W. 989. We have denominated garnishment as a species of attachment. *Lawrence* v.

*Ford Motor Credit Company,* 247 Ark. 1125, 449 S.W. 2d 695; *Allen* v. *Stracener,* 214 Ark. 688, 217 S.W. 2d 620. In *Foster,* we held garnishment to be a provisional remedy in the sense of the statute fixing the jurisdiction of such remedies by a justice of the peace upon the authority of our holdings that attachment was a provisional remedy, saying that the two remedies are so nearly alike that it would seem that there would be no reason for holding attachment to be a provisional remedy and garnishment of the sort resorted to in that case not a provisional remedy. In *Lawrence,* we found no difficulty in holding that the statute governing a dispute about the validity of an attachment and assertions of claims against attached property to be applicable to garnishment proceedings because the service of a writ of garnishment upon a debtor is an attachment of the debt or a form of levy thereon. Clearly, what we have said with reference to the failure to file any bond in an attachment action would govern prejudgment garnishment proceedings.

We have frequently, and without exception, held that garnishment is a statutory procedure and that strict compliance with garnishment statutes is essential to the validity of the proceeding. *Hervey* v. *The Farms, Inc.,* 252 Ark. 881, 481 S.W. 2d 348; *Roach* v. *Henry,* 186 Ark. 884, 56 S.W. 2d 577; *Missouri Pacific R. Co.* v. *McLendon,* 185 Ark. 204, 46 S.W. 2d 626; *Schiele* v. *Dillard,* 94 Ark. 277, 126 S.W. 835; *First National Bank of Huttig* v. *Rhode Island Insurance Company,* 184 Ark. 812, 43 S.W. 2d 535. While the *McLendon* and *First National Bank of Huttig* cases turned upon the issuance of the writ of garnishment before the issuance of process for the defendant in the case, both stand for the proposition that a plaintiff has no right to have a writ of garnishment issued without complying with the statutory procedure. In the *McLendon* case, this court, citing *First National Bank of Huttig* v. *Rhode Island Insurance Company,* supra, said:

> There is no claim in this case that the statute was complied with before the writ of garnishment was issued and served. The proceedings therefore were void.

Inasmuch as there is ample authority in our own cases for quashing this garnishment, it is not necessary to resort to authorities from other jurisdictions. I would add, however, that so holding would place us in line with the general rule supported by the vast weight of authority that, when a garnishment statute requires the posting of a bond, this action is a condition precedent to the issuance of the writ, and, if the bond is not filed, the writ is void and should be dissolved. See *Van Moorhem* v. *Roche Harbor Lime & Cement Co.,* 169 Wash. 354, 13 P. 2d 496 (1932); *Citizens National Bank* v. *Pollard,* 31 S.W. 2d 508 (Tex. Civ. App. 1930); 6 Am. Jur. 2d 928, Attachments, § 518; 38 C.J.S. 361, Garnishment, § 145.[1]

Even though this issue, raised in the trial court, was not argued on appeal, it is the long-standing rule of this court that, irrespective of the reasons set forth by the trial court as the basis for its decision, we will not reverse if the decision reached by the trial court is correct. *Reamey* v. *Watt,* 240 Ark. 893, 403 S.W. 2d 102; *Reeves* v. *Arkansas Louisiana Gas Co.,* 239 Ark. 646, 391 S.W. 2d 13; *Polk* v. *Stephens,* 126 Ark. 159, 189 S.W. 837.

This court has said for more than 75 years that courts do not and should not pass upon constitutional questions unless the answers to those questions are so necessary to a determination of the case that it cannot otherwise be decided. *Missouri Pacific Ry. Co.* v. *Smith,* 60 Ark. 221, 29 S.W. 752; *Porter* v. *Waterman,* 77 Ark. 383, 91 S.W. 754; *Smith* v. *Garretson,* 176 Ark. 834, 4 S.W. 2d 520; *Honea* v. *Federal Land Bank of St. Louis,* 187 Ark. 619, 61 S.W. 2d 436; *Satterfield* v. *State,* 245 Ark. 337, 432 S.W. 2d 472; *County of Searcy* v. *Stephenson,* 244 Ark. 54, 424 S.W. 2d 369; *Mobley* v. *Conway County Court,* 236 Ark. 163, 365 S.W. 2d 122; *Rome* v. *Ahlert,* 231 Ark. 844, 332 S.W. 2d 809. We have even said that where the case can be disposed of without determining the constitutional question, it is our *duty* to

---

[1]Our holdings in such cases as *Smith* v. *Howard,* 23 Ark. 203, and *Mandel* v. *Peet,* 18 Ark. 236, that a party may amend a bond filed by it which is defective, are also in harmony with the weight of authority on the subject, but are in nowise inconsistent with the rule that a garnishment issued before the bond is filed is void and should be quashed.

do so *(Herman Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487); that constitutional questions are *never* decided unless necessary *(Little Rock Road Machinery Co.* v. *Jackson County,* 233 Ark. 53, 342 S.W. 2d 407); and that constitutional questions are not decided unless the case cannot be disposed of on any other ground *(Bailey* v. *State,* 229 Ark. 74, 313 S.W. 2d 388, cert. denied 358 U.S. 869, 79 S. Ct. 101, 3 L. Ed. 2d 101).

Our predominant rule was founded upon the language of Judge Cooley quoted in *Missouri Pacific Ry. Co.* v. *Smith,* supra. A part of that quotation follows:

> In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it and when, consequently, a decision upon such question will be unavoidable.

In *Board of Equalization* v. *Evelyn Hills Shopping Center,* 251 Ark. 1055, 476 S.W. 2d 211, we did not reach constitutional arguments there made "in accord with our long-standing rule that constitutional issues will not be determined unless their determination is essential to disposition of the case," citing *Martin* v. *State,* 79 Ark. 236, 96 S.W. 372 and *Bell* v. *Bell,* 249 Ark. 959, 462 S.W. 2d 837.

The reasons for abiding by our well established rules in this regard are particularly compelling in this case. In *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337, 89 S. Ct. 1820, 23 L.Ed. 2d 349 (1969), the Supreme Court of the United States went no further than to hold that the garnishment statute involved was void insofar as it authorized the issuance of a garnishment by a clerk of the court without notice and prior to judgment, when the subject of the garnishment was wages. Wages are not

involved in this case. It is true the United States Supreme Court in *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), has extended the *Sniadach* principle to a replevin action. I do not feel the fact this case was decided by a 4-3 vote, with two justices not participating, renders it ineffective as a precedent in cases which are indistinguishable. It is true that several jurisdictions have applied *Sniadach* to invalidate statutes similar to ours, insofar as they provide for garnishment of other assets and property [see *Etheredge* v. *Bradley* 502 P. 2d 146 (Alaska 1972) and cases cited therein], but, on the other hand, the Supreme Court of Arizona in *Roofing Wholesale Co., Inc.* v. *Palmer,* 108 Ariz. 508, 502 P. 2d 1327 (1973), reached a completely contrary result. The Arizona Supreme Court, expressing the belief that it was not unreasonable to ask that the United States Supreme Court speak with a majority voice before the Arizona court should declare unconstitutional statutes enacted by the state legislature, said:

> Admittedly, were we convinced that the four man majority of the United States Supreme Court in Fuentes, supra, would become at least a five man majority when the two judges who did not participate in the particular case are called up to participate in a similar question, we would then be inclined to follow the decision as set down in Fuentes, supra. When, however, we have doubts that once the full court hears the case that the opinion will stand, we are reluctant to declare unconstitutional Arizona statutes based upon a decision by less than a clear majority.

While I would not like to go as far as the Arizona court has gone, the reasons stated by that court should certainly give this court pause before it disregards its well established rule about avoidance of the decision of constitutional questions. In considering this matter, it is significant that the General Assembly. of 1973 saw fit to provide for procedures relating to prejudgment replevin but did not do so in regard to prejudgment garnishment. It is not unreasonable to assume that our legislative branch thought that *Fuentes* dictated a re-

vision of procedures as to replevin actions but thought that it did not have the effect of extending *Sniadach* to prejudgment garnishment of anything other than wages.[2] There is no reason to believe the legislature should have been less conscious of creditors' rights in one instance than in the other. Furthermore, the dissenters in *Fuentes* assert that the four-judge majority has reached a result representing no more than ideological tinkering with state law. When a full court reaches a case such as this one, it may well hold that the rule of *Fuentes* has no application to a contract of the type here involved where the garnishment may well reach a debt which is covered by a security agreement given by the defendant to the garnishing plaintiff. The record here discloses that the security was given for a "floor plan" type of financing appellees' business of selling mobile homes. It has been suggested that there is a clear indication that the court in *Fuentes* did not hold the statutes involved to be unconstitutional on their faces. The Supreme Court, 1971 Term, 86 Harvard Law Review, 1, 94. The majority in *Fuentes* specifically states that its holding was a narrow one. This has led to speculation that some attachment statutes will not be affected. Case note, Replevin—Prior Notice and Hearing—Due Process, 40 Tenn. Law Review 125, 133 (1972). In this same case note, the same uncertainty as to the ultimate effect of *Fuentes*, which caused the Arizona court to feel that it was not bound thereby, was expressed thus:

> Perhaps the most interesting sidelight of the instant case is that it is a 4-3 decision, with Justices Powell and Rehnquist, who frequently are aligned with the three dissenters, Justices White, Burger and Blackmun, not participating. Therefore, an aura of doubt surrounds the further application of the instant holding to other state prejudgment remedies.

The limitations recognized in *Sniadach* certainly justify this doubt, for the majority in *Sniadach* said:

---

[2]In a footnote to the opinion in *Fuentes* the majority pointed out that six different courts, in upholding summary prejudgment proceedings, had contrued *Sniadach* as closely confined to its own facts.

A procedural rule that may satisfy due process for attachments in general, see McKay v. McInnes, 279 US 820, 73 L Ed 975, 49 S Ct 344, does not necessarily satisfy procedural due process in every case. The fact that a procedure would pass muster under a feudal regime does not mean it gives necessary protection to all property in its modern forms. We deal here with wages—a specialized type of property presenting distinct problems in our economic system. We turn then to the nature of that property and problems of procedural due process.

I cannot subscribe to the position taken in the majority opinion that our statute could not be valid as to assets other than wages. But we should not really consider this possibility, because of the desirability of avoiding the constitutional question and because, if *Sniadach* is to be limited to prejudgment garnishment of wages, then the appellees in this case would have no standing to raise the constitutional issue. See *May* v. *State*, 254 Ark. 194, 492 S.W. 2d 888, where we held our abortion statute to be constitutional as to laymen, but recognized that the holdings of the United States Supreme Court in *Doe* v. *Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201, and *Roe* v. *Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147, had the effect of striking down the prohibition in that statute as against physicians during the period preceding approximately the end of the first trimester of pregnancy.

I would affirm the order of the trial court, but reserve the question of constitutionality of the garnishment statute as to prejudgment garnishments in cases such as this until such time as we are directly confronted with that problem and cannot dispose of the case on any other basis in the hope that, by the time we are so confronted, the United States Supreme Court, by action of a full court, may have given the matter further treatment.

GEORGE ROSE SMITH and BROWN, JJ., join in this opinion.