## PIONEER FINANCE COMPANY *v.* Nancy MURCHISON

74-362                                          521 S.W. 2d 524

Opinion delivered April 21, 1975

*Sam Goodkin*, for appellant.

*Harry A. Foltz*, for appellee.

*Jim Guy Tucker*, Atty. Gen., by: *Lonnie A. Powers*, Dep. Atty. Gen., *Amicus Curiae*.

CONLEY BYRD, Justice. At issue here is the validity of Acts 1953, No. 559 [Ark. Stat. Ann. §§ 67-1401 et seq (Repl. 1966)]. That Act makes it unlawful for any nonresident person, partnership or corporation to "engage in the business of lending money in the State of Arkansas by means of advertising over the radio, through the mails or by any other means of advertising" unless the nonresident posts a bond in the amount of $5,000, designates an agent for service and files a notice with the State Bank Department of an intention to engage in the business of lending money. Section 5 provides that any loan made either under the act or contrary thereto "shall be held to be an Arkansas Contract" and Section 6 makes null and void any contract made contrary to the Act.

The facts giving rise to this litigation were stipulated. Appellee, Nancy Murchison, a resident of Arkansas, went across the state line to appellant's office in Arkoma, Oklahoma, and borrowed a stipulated sum of money. Since that time she has made no payments thereon and is in default. The loan arrangement is valid under the laws of Oklahoma. Appellant, Pioneer Finance Company, is an Oklahoma Corporation engaged in the business of lending money and as such does considerable advertising in the Fort Smith, Arkansas newspapers, Southwestern Bell Telephone Directory, etc.

The trial court held the Oklahoma loan contract void under Acts 1953, No. 559, and rendered judgment for appellee. Hence this appeal.

As can be seen from the foregoing recitations, the Act here in question imposes burdens upon nonresident lenders that are not applied to resident lenders.

Appellee recognizes that the transaction here involved is controlled by the commerce clause of the United States Constitution but relies upon *Head* v. *New Mexico Board*, 374 U.S. 424, 83 S. Ct. 1759, 10 L. Ed. 2d 983 (1963), as making this a permissible police regulation relating to the health, life and safety of the citizens of the State of Arkansas. In this connection appellee points to the annotation of the *Head* case appearing at 10 L. Ed. 2d 1388 as follows:

"Although it was suggested in some early commerce clause cases that any burden imposed upon interstate commerce by a state or municipality was unconstitutional, or that any "direct" or "substantial" burden on interstate commerce was unconstitutional, the currently accepted view is that a state or municipality, in regulating advertising, may constitutionally impose a burden on interstate commerce if there is (1) a sufficient local interest in the matter regulated, and a reasonable exercise of the 'police power,' (2) no discrimination against interstate commerce, and (3) no disruption of required uniformity as to regulation of interstate commerce.

Thus, in upholding advertising regulations the courts have often emphasized that (1) there was a substantial local interest in the matter regulated, and the 'police power' to regulate such matters as those affecting health, safety, and morals was reasonably exercised; (2) there was no discrimination against nonresidents or against interstate commerce; and (3) there was no disruption of required uniformity. On the other hand, where advertising regulations have been considered unconstitutional as applied to interstate commerce, it has been insufficient local interest in the matter regulated, or that there was interference with an area of interstate commerce which, if regulated at all, required uniformity of regulation."

Appellee to get around the nondiscrimination requirement then argues:

"Applying the second part of the test to the instant case, there is no *discrimination* against interstate commerce because in effect this statute is simply making it impossible for a foreign lender who solicits loans from Arkansas residents by advertising to lend money at a higher interest rate than 10% and still enforce its contracts, just as Arkansas lenders are prohibited from doing. Whether a state unconstitutionally discriminates against commerce is to be determined, not by the ostensible reach of its language, but by its practical operation."

In this argument appellee erroneously assumes that the prohibition set forth in Acts 1953, No. 559, is limited to contracts in excess of 10% interest per annum. As we read the Act it would void a non interest bearing contract.

Having demonstrated that the Act discriminates against interstate commerce, it follows that we must hold that it is invalid. Consequently, we need not reach the other arguments made with respect to the invalidity of the Act.

Reversed and remanded with direction to enter judgment according to the stipulated facts.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result. The first issue raised on this appeal questioned the applicability of Act 559 of 1953 [Ark. Stat. Ann. § 67-1401 - 1406 (Repl. 1966)]. The appellant does not have a place of business in Arkansas. It makes loans to Arkansas residents who come to apply for them at its offices in Arkoma and Sallisaw, Oklahoma. Appellee came to appellant's place of business on September 24, 1973, and borrowed a sum of money and executed a promissory note and a security agreement. Act 559 makes it unlawful for a nonresident person, partnership, firm or corporation to engage in the business of lending money in the State of Arkansas by means of advertising without complying with the act. Ark. Stat. Ann. § 67-1401. It also provides that any such person, partnership, firm or corporation engaged in the business of lending money in the State of Arkansas by means of advertising shall be considered doing business in this state. Ark. Stat. Ann. § 67-1402. The engaging in the business of lending or attempting to *lend money in the State of Arkansas* without complying with the act is a misdemeanor. Ark. Stat. Ann. § 67-1404. It makes null and void any contract made contrary to the provisions of the act. Ark. Stat. Ann. § 67-1406. The loan was not made in Arkansas. The act is clearly not applicable in this case.

This being the case, there is no reason or justification for treatment of the constitutional issue. For more than 75 years this court had said that it would not and should not consider constitutional questions unless the answers were so necessary to a decision in the case that it could not otherwise be decid-

ed. We said so as late as 1972 in *Board of Equalization* v. *Evelyn Hills Shopping Center*, 251 Ark. 1055, 476 S.W.2d 211. The court discovered an exception theretofore non-existent in Arkansas in *Wood* v. *Goodson*, 253 Ark. 196, 485 S.W. 2d 213. That exception "is where the settlement of the controversy involves a matter of public importance." I don't know what this means, and I doubt that my brethren do. It seems to me that it will lead to ad hoc, case by case, decisions as to whether a question is of sufficient "public importance" to justify the court in exercising its power to construe the constitutions of Arkansas and the United States. It will inevitably produce whimsical and inconsistent determinations dependent upon current personnel of the court and its collective mood of the moment - something the judiciary should abhor as an impediment to the successful operation of a constitutional, tripartite government, and the rule of law.

Judicial restraint should be greatest when the judicial department is called upon, as it is here, to strike down a statute adopted by the legislative department, the primary policy making branch in our system of government and the repository of all powers of government not reserved to the people or assigned to another government or department of government.

I can only reiterate the protest I have registered in such cases as *Grimmett* v. *State*, 251 Ark. 270-A, 476 S.W. 2d 217; *Wood* v. *Goodson*, supra; *GAC Trans-World Acceptance Corp.* v. *Jaynes Enterprises, Inc.*, 255 Ark. 752, 502 S.W. 2d 651.

In *Wood* v. *Goodson*, supra, we were called upon to strike down a judicial act, not a legislative one, as we are here. I submit that the public importance of the decision here is far less than was the case in Board of *Equalization* v. *Evelyn Hills Shopping Center*, supra, and in many other cases where this court has properly avoided the opportunity to exercise its powers to decide constitutional questions, particularly where doing so results in striking down a solemn enactment of a coordinate, coequal department of government.

If the loan had been made *in* Arkansas we would not have been presented with the constitutional question in this

case. The loan would have been challenged as usurious. At least, we would have the matter before us in a different factual context.