The Honorable Allen Gordon State Senator 105 South Moose Morrilton, Arkansas 72110
Dear Senator Gordon:
This is in response to your request for an opinion regarding the county's obligation to furnish a court reporter for juvenile hearings. You have asked, specifically, whether this office has interpreted Act 14 of 1987 to require a court reporter and whether the county which funds juvenile matters is required to provide such service. You have also asked what, if any, action could be taken to force payment to a reporter.
The only guidance offered in Act 14 with respect to the county's obligation to appropriate funds for the juvenile divisions of the circuit and probate courts is found in Section 8 of the Act which authorizes the quorum court's appropriation of funds ". . . for the employment of referees (masters), probation officers, and other support personnel necessary to assist such divisions in the performance of their duties under this Act." Section 8 goes on to mandate the appropriation of an amount of financial support ". . . which shall not be less than the amount appropriated for the support of the juvenile court of such county for the 1987 county fiscal year."
Act 14 does not on its face require that a court reporter be provided for the juvenile divisions of the circuit and probate courts. Nor is there other separate statutory authority for such a position. It may be contended that the court reporters for the circuit and probate courts must also serve the juvenile divisions of those courts. A question arises, however, with respect to payment for these services since, under Section 9 of Act 14, laws pertaining to fees collected for cases filed in circuit and probate court are not applicable to cases filed in the juvenile divisions of these courts. It therefore appears that there is no authority for paying a court reporter in the juvenile division from funds comprising the "Court Reporters' Fund" under A.C.A.16-20-107 and 16-13-508 (Supp. 1987). It is also significant to note in this regard that the legislature has expressly stated its intent for the county to pay the salaries of juvenile court personnel. See A.C.A. 9-27-314 (Supp. 1987). This provision apparently remains in force following the enactment of Act 14 of 1987 since, under Section 5(a) of that Act, "[t]he juvenile division of the circuit court and the juvenile division of the probate court of each county shall be administered . . . in the same manner and procedures as provided in the Arkansas Juvenile Code of 1975, as amended, and shall be operated in accordance with the procedures prescribed by law for the operation of juvenile courts. . . ."
It must be concluded from the foregoing that the legislature has made no provision for a court reporter in juvenile proceedings. However, it has been stated that "[t]he separation of powers doctrine [Ark. Const. Art. 1- and 2] necessarily implies that a court has the constitutional authority to order these acts done which are necessary and essential for the court to operate." Venhaus v State ex rel. Lofton, 285 Ark. 23, 28, 684 S.W.2d 252
(1985). See also Turner, Ex-Parte, 40 Ark. 548 (1883). It may be successfully contended in this instance that a court reporter is essential to the operation of the juvenile divisions of the circuit and probate courts since appeals are now taken from the juvenile division to the Arkansas Supreme Court. See Section 11 of Act 14 of 1987. The Arkansas Supreme Court has stated as a general matter that "[u]nder modern conditions, the court reporter is an essential officer in reporting the proceedings of the courts." Mears v. Hall, 263 Ark. 827, 845, 569 S.W.2d 91
(1978), citing Sebastian Bridge v. Lynch, 200 Ark. 134, 138 S.W.2d 81
(1940).
The judges of the circuit court and probate court may therefore have the inherent authority to order the payment of court reporters in the juvenile divisions of those courts. A determination should also be made with respect to the county's appropriation of funds in an amount at least equal to the appropriation for the 1987 county fiscal year. The county's failure to comply with Act 14 in this regard will subject it to a loss of turnback revenues.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.